THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM PERKINS, Defendant-Appellant.

(No. 58542;

First District (3rd Division)—January 31, 1974.

Paul Bradley, Deputy Defender, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

The defendant, William Perkins, was convicted of the offense of armed robbery after a jury trial in the circuit court of Cook County. After a hearing in aggravation and mitigation he was sentenced to a term of six to twelve years in the Illinois State Penitentiary. In this appeal the defendant contends that he was not proven guilty beyond a reasonable doubt; that the State's Attorney's closing argument was prejudicial; that he was improperly denied counsel of his own choice; and the sentence imposed was excessive and should be reduced.

We affirm.

The pertinent facts adduced at trial are as follows: The complaining witness, Richard Ringswald, testified that on the night of December 22, 1971, he was employed by the Yellow Cab Company as a taxi driver. That night, between 11 and 11:30 P.M., he picked up the defendant as a fare near Clark and Randolph Streets in the city of Chicago. During the course of the trip to the defendant's destination at the LaSalle Hotel the defendant asked Ringswald if he was interested in purchasing a stereo. Ringswald replied that he was interested. The defendant went into the hotel, returned in about 10 minutes and told Ringswald that the stereo would cost about $50. Ringswald testified that he then told the defendant that he didn't have that much money, but could borrow the amount needed from his mother. Ringswald then drove to his home on South Racine Avenue and borrowed twenty-five dollars from his mother. Upon his return to the cab he was directed by the defendant to drive to the Hoover Hotel where the defendant was again absent from the cab for about 20 minutes. Ringswald was then directed to drive to the area of Congress and Pulaski where he was told they would pick up the stereo. Ringswald testified that when they arrived in this area the defendant produced a pistol and demanded his money. Ringswald gave the defendant twenty-five dollars, but he demanded more. The defendant then got into the front seat of the cab and struck Ringswald on the head, knocking him unconscious. When he awoke Ringswald

discovered he was missing another twenty-five dollars and his cigarette lighter. Ringswald then drove to a nearby police station and reported the incident.

Sometime later, in February, 1972, Ringswald observed the defendant in front of the Palmer House Hotel in Chicago. Ringswald then approached a police officer, informed him of the robbery that had occurred in December and the defendant was arrested. The facts surrounding the defendant's arrest were corroborated by the testimony of Officers Cahill and Koch of the Chicago Police Department.

The defendant also testified and maintained that he had not robbed Ringswald, but had "conned" the money from him by telling him he could get him a deal on a stereo. The defendant's narrative of his travels with Ringswald on that evening are essentially similar to those testified to by Ringswald, except for his description of what occurred at the end of the evening. The defendant testified that the last stop was a gas station where the defendant asked for and received the requested purchase price of the stereo. Ringswald was then told to wait and the defendant left the cab not to be seen again by Ringswald until the following February.

In this appeal the defendant contends that he was not proven guilty beyond a reasonable doubt. He argues that the contradictory evidence produced at trial is "insufficient to uphold his conviction as it amounts to nothing more than a naked accusation."

■■ It is true, as the defendant suggests, that the courts of review will not hesitate to reverse a judgment of conviction where the State's evidence is so improbable, unconvincing and contrary to human experience as to leave a reasonable doubt of the defendant's guilt. However, there is no such defect in the State's evidence in the instant case. Ringswald's testimony as to the events that occurred on the night of December 22, 1971, although admittedly not a description of the "typical" armed robbery, clearly identifies the defendant as the person who robbed him. In this regard it is the function of the trier of fact to determine the credibility of witnesses and where the evidence is merely conflicting the reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Clark* (1964), 30 Ill.2d 216, 195 N.E.2d 631.) It is also clear that the testimony of a single witness, if positive and credible, is sufficient to convict even though contradicted by the accused. *People v. Humphrey* (1970), 129 Ill.App.2d 404, 262 N.E.2d 721.

The defendant next contends that he was denied his right to a fair trial because of the prejudicial argument of the State's Attorneys. That portion of the argument of which the defendant complains are set out below:

"MR. OBERT: Now I ask you why would he lie under oath? Why would he get up and simply state this was a con game if it wasn't armed robbery. What does he have to lose? He has nothing to lose to get up on that witness stand and lie. And why would he readily admit to you that he is guilty of a theft, but not the armed robbery? Because there is a day and night difference between petty theft and an indictment for armed robbery. Do you know what he was trying to do by his testimony? He was trying to con each and every one of you to believe that he didn't commit an armed robbery, is only guilty of a simple petty theft. And if you are going to let him con you, then there's the front door, you let him walk back out into society.

MR. SAMMONS: Objection to that form of argument.

THE COURT: Sustained.

\* \* \*

[The co-prosecutor, Mr. Driscoll, continued:] Well, the defendant by his testimony admitted he falls down and goes around stealing and conning people out of money, or property, to feed his habit. And I submit, ladies and gentlemen, that the final determination comes down to do you believe he also used a gun to take the money from Mr. Ringswald? I submit, ladies and gentlemen, that this defendant got up on the witness stand and he is trying to con you into believing him and making you feel sorry for him. He is a long-time criminal, by his own admission, he knows the difference between theft and armed robbery. It is a big difference to him.

\* \* \*

[Mr. Driscoll continued:] I submit, ladies and gentlemen, that you are not going to be fooled or conned, or receive a snow job into believing that it strains anybody's imagination. Why would Mr. Ringswald get up there and lie? Can you think of one reason he would go to the police and report a robbery, go to the hospital, stop Officer Cahill? Can you think of any reason why he would come to Court and lie under oath and tell this story if it were not true? What does he have to gain? As Mr. Obert says, nothing at all, nothing at all. But what does the defendant have to gain? He has everything to gain, because he is the defendant on trial."

The defendant argues that these statements presented one predominant theme—that the defendant was a liar, and that he had lied to the jury—and this so prejudiced the jury that he was denied a fair trial. We do not agree.

Although it has been recognized by our courts that it is nearly im-

possible to lay down a general rule in regard to what shall or shall not be said in an argument to a jury there are some general guidelines. In *People v. Black* (1925), 317 Ill. 603, 148 N.E. 281, the court said: "It is legitimate argument, if the State's Attorney so believes, to tell the jury the State's witnesses told the truth and are more credible than those for the defendant, but it is improper for him to express his own individual opinion or belief of defendant's guilt except as that opinion is based on the evidence." 317 Ill. at 619.

In *People v. Sicks* (1921), 299 Ill. 282, 132 N.E. 573, where the State's Attorney characterized one of the witnesses as "a liar and a perjurer", the court commented that the State's Attorney should have used other language to convey his impression of the witness as "[s]uch language should not be used in any court." (299 Ill. at 285.) However, the court held that the remark was not of that character that demanded a reversal of conviction.

In *People v. Sinclair* (1963), 27 Ill.2d 505, 190 N.E.2d 298, the prosecutor remarked that the defendant's testimony was a "cock-and-bull" story. The court stated: "A prosecutor may argue that the testimony of a witness is false if he relies on the evidence and the inferences from it to support his conclusion." 27 Ill.2d at 509.

■■ In the instant case the remarks of the State's Attorney were objectionable and should not have been made. However, as in both *Sicks* and *Sinclair,* our review of the entire record indicates that they were not of such objectionable character as to amount to a denial of the defendant's right to a fair trial.

The defendant next contends that he was improperly denied counsel of his own choice at trial. In this regard the defendant directs our attention to a portion of the transcript of proceedings which records a discussion among the trial judge, the defendant, and his counsel. Upon the case being called for trial the defendant requested that the trial judge appoint another attorney to represent him as he believed the public defender previously appointed would not vigorously defend him. The trial judge, indicating a willingness to satisfy the defendant's request, pointed out to the defendant that a newly appointed attorney, being unfamiliar with the case, would need time to prepare himself for the jury trial the defendant demanded and that this would necessitate a continuance being charged to the defendant. The defendant's previously appointed attorney pointed out to the court that he was ready to proceed to trial but that there was no other attorney on the public defender's staff who was then familiar enough with the case to begin without some continuance. The public defender also advised the court that he had requested another public defender to assist him with the trial of the case.

In response the defendant very clearly stated that he did not want a continuance and on a number of occasions during the discussion stated that he was ready for trial. The trial judge again explained the situation to the defendant and concluded by asking him if he wanted to go to trial then or if he wanted another attorney. The defendant replied, "I want to go to trial today."

At the next court session the defendant again requested another attorney to represent him. The court denied this request stating that he had previously denied the request when the defendant insisted on beginning the trial. The defendant again concluded this discussion by stating, "I am ready for trial." The trial then proceeded and the defendant was convicted.

On the basis of these facts the defendant contends he was denied the right to counsel of his own choice and cites a number of cases in support of his argument, none of which are on point.

In *Carnley v. Cochran* (1962), 369 U.S. 506, 8 L.Ed.2d 70, 82 S.Ct. 884; *Chandler v. Fretag* (1954), 348 U.S. 3, 99 L.Ed. 4, 75 S.Ct. 1, and *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L.Ed. 1461, the defendants were denied the assistance of an attorney altogether and forced to go to trial without counsel. In both *People v. Green* (1969), 42 Ill.2d 555, 248 N.E. 2d 116, and *People v. Payne* (1970), 46 Ill.2d 585, 264 N.E.2d 167, the defendants requested a continuance in order to be represented by private counsel and their requests were denied by the trial judge, thereby forcing the defendants to proceed to trial with appointed counsel. In *People v. Cohen* (1949), 402 Ill. 574, 85 N.E.2d 19, the defendant's private counsel was present in court and ready to proceed when his motion for substitution of attorneys was denied.

■■ In the instant case the defendant was clearly informed by the trial judge that his request for another attorney, being made on the trial date, would require a continuance as there was no attorney present who could proceed with the case except the previously appointed public defender. Nevertheless, the defendant clearly and unequivocally demanded an immediate trial. In view of this demand for trial and the fact that the defendant was then represented by competent counsel there was no error in the trial judge's decision. Justice does not require a reversal of the defendant's conviction where the defendant waits until the trial date to request an attorney other than the court appointed attorney, but refuses a continuance in order that one may be appointed.

■■ Finally, the defendant contends that the sentence imposed by the trial court is excessive. The sentence of six to twelve years for the offense of armed robbery is within the standards established by the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1 (c) (2)) and there is no indication of any abuse of discretion on the

part of the trial court. For these reasons the sentence will not be disturbed. *People v. Spicer* (1970), 47 Ill.2d 114, 264 N.E.2d 181.

Judgment affirmed.

DEMPSEY and MEJDA, JJ., concur.