THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDERSON GARTH, Defendant-Appellant.

(No. 74-412;

Fifth District—August 27, 1975.

Stephen P. Hurley and Michael J. Rosborough, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

After a jury trial, the defendant-appellant was found guilty of three armed robberies. The trial court subsequently imposed a single sentence of 10 to 30 years in the penitentiary. On appeal, the defendant submits

two issues for review: whether he was denied a fair trial; whether the court imposed an excessive sentence.

On November 1, 1973, the defendant was indicted for the armed robberies of Robin Brunsman, Daniel Seifert and Bob McAnallen which had occurred in the early morning of October 1, 1973. On January 21, 1974, a hearing was conducted on the defense motions to suppress identifications and illegally obtained evidence. Testimony at the hearing established that each of the three victims identified the defendant at a lineup as one of four men who had robbed them. The testimony of a police officer also indicated that when the defendant was arrested on the instant charge, he was carrying a .38 Smith & Wesson snub-nose pistol. The trial court denied the defendant's motion to suppress.

The record of the defendant's jury trial on the instant charge showed that the three victims left the campus of Parks College in Cahokia, Illinois, about midnight and drove towards East St. Louis. After they were in the city, McAnallen, who was the driver, stopped his car to talk with two persons who were in another car which had also stopped. As a result of a conversation with the two occupants of the other car about getting some beer and going to a party, the three students followed the other car to another location.

Brunsman testified that they followed the car to a house on a side street, and his friends Seifert and McAnallen got out of the car and conversed with the individuals in the other car. Seifert related that the man whom he later identified as the defendant, and the driver of the other car met two other persons at this location. According to Brunsman, the man whom he later identified as the defendant then got into the front seat of the victim's car. Seifert and McAnallen corroborated this testimony. With the defendant in their car, the victims followed the other car to a vacant lot or field where they were joined by a third car.

Seifert related that he, the man whom he identified as the defendant, and a third unidentified man walked approximately a block and a half to a house so as to get some beer. No was home so they started back; as they got closer to the cars, the two men accompanying him walked off in another direction. When he was about 50 feet from the cars, Seifert explained, someone came out of the nearby bushes with a shotgun. The man whom he identified as the defendant came up from behind carrying a hand gun.

In the meantime, Brunsman and McAnallen stayed in the car while two other individuals waited outside. The witnesses related as they were sitting in the car, someone thrust a shotgun through the right front window. Brunsman then testified as follows:

"They told us to get out of the car. We got out. We weren't going to say anything. They kept wanting to know where our piece was. They thought we had a gun for some reason. We told them we didn't have one. They told us to lie down and put our heads under the car. Our bodies were sticking out, you know. They told us to put our hands behind our back, like this, with our hands on the ground. They went through and took our wallets and our watches." McAnallen corroborated Brunsman's account of these events.

Shortly after their wallets and watches had been taken, Brunsman and McAnallen observed Seifert being brought back at gunpoint by the defendant, who then searched Seifert. His wallet and watch were taken. The victims were then told to get up and "take off running."

Officer Charles Kenney of the East St. Louis Police Department testified that he responded to a call from a cab station at 4:26 a.m. He observed the victims and the condition they were in, and the officer took statements from the victims which included a description of the four robbers.

On the evening following the robbery, Brunsman and Seifert went to the police station to view photographs in an effort to identify the robbers. A day later McAnallen accompanied Brunsman to view the photographs, and all three agreed on one photograph. Patrolman Carl Brinkley testified that he arrested the defendant at 11 p.m. on October 5, 1973. When arrested the defendant was a passenger in an automobile which drove around the protective gates of a railroad crossing when the gates blocked the crossing. The officer recognized the defendant from a wanted poster, and when frisked, the defendant was found to be in possession of a .38-caliber revolver. All three robbery victims identified the defendant in a lineup which was held 2 days after his arrest.

Abigal Garth, the defendant's sister, testified in her brother's behalf. She related that when she returned home from a shopping trip for her sister's birthday party, the defendant was waiting for her on the porch. It was about 10 p.m., and later he fell asleep on the couch and when she awoke the next morning the defendant was still asleep. On cross-examination Ms. Garth stated that she could not recall the date of her brother's arrest or the date of the incident for which he was on trial. On re-cross-examination she explained she knew the date of the party because October 1 was her sister Ernestine's 17th birthday.

The defense made an offer of proof outside the presence of the jury, calling Officer Henry Niblett, Jr., to the stand. Officer Niblett was prepared to testify that on October 6, 1973, the defendant, who was in custody on the instant charges, asked to be placed in a lineup for possible identification of the robbery victims. The court denied the offer of proof

on the grounds that the testimony was inadmissible hearsay. In rebuttal, the State called Sandra Wilkinson, a deputy county clerk and custodian of birth records. Ms. Wilkinson, testified that she found a birth record of an Ernestine Garth that reported her birth on October 16, 1956. The witness stated that she had searched the records over a 2-year period and could find no one of the name of Ernestine Garth having been born in St. Clair County on October 1 that could be 17 years old. The court overruled the objection to the rebuttal testimony stating that the objection went only to the weight of the evidence, not its admissibility.

The defendant contends that the trial court erred in refusing to allow the testimony of a police officer regarding exculpatory statements made by the defendant after his arrest. In particular, the defendant argues that the court's ruling that the officer's testimony would be hearsay was erroneous.

■■ A statement made by a defendant in custody after his arrest that is offered in his favor is not an admission and is subject to objection on hearsay grounds. (*People v. McLaughlin*, 337 Ill. 259; *People v. Colletti*, 101 Ill.App.2d 51.) Because the defendant was in jail after his arrest when he asked Officer Niblett to place him in the lineup, the officer's account of his request was subject to hearsay objection. Since the defendant did not take the stand in his own behalf, he could not have been cross-examined regarding his motives and reasons for requesting Officer Niblett to place him in the lineup. His request was a self-serving out-of-court statement offered to prove the truth of his innocence. For these reasons, we conclude that the court properly excluded the proffered testimony of Officer Niblett.

■■ Next, the defendant contends that the trial court erred in allowing the impeachment of the defendant's alibi witness upon a collateral matter. The credibility of a witness is always at issue. Evidence elicited on cross-examination or offered as impeachment is admissible if it tends to show a witness' bias and lack of credibility. The defendant's alibi depended entirely upon his sister's testimony placing him at her home on the night of the offense. The rebuttal evidence tarnished the credibility of his sister's testimony and therefore of the defendant's alibi. Consequently, the rebuttal evidence was properly admitted by the trial court after the prosecutor, on cross-examination of the defendant's alibi witness, had laid the foundation for its admissibility as impeachment of credibility of the alibi witness. Accordingly, we find that the defendant received a fair trial.

■■ Finally, the defendant contends that the court imposed an excessive sentence. The standard of review where the sentence imposed is within statutory limits is whether the trial court exercised proper discretion in imposing the sentence. To modify the sentence it must appear to

this court that the sentence imposed clearly departs from the spirit and requirement of the Constitution that the sentence be proportionate with the nature of the offense as well as the possibilities of rehabilitation. (*People v. Hogue*, 1 Ill.App.3d 881.) The presentence report was the only evidence in aggravation and mitigation. The report stated that the defendant had no employment history; he was on probation for a burglary conviction at the time of the armed robbery, and was still on parole from a prior juvenile adjudication. The crimes were serious Class 1 felonies. Evidence at the trial established that the defendant robbed one of the victims at gunpoint, and when he was arrested he had a similar gun in his possession. For all of the foregoing reasons, we do not believe that the trial court abused its discretion in imposing sentence.

The judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

JONES, P. J., and G. MORAN, J., concur.