THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LOUIS PEREZ, Defendant-Appellant.

First District (4th Division)    No. 79-1051

Opinion filed March 19, 1981.

Francis E. Andrew, of Chicago (Mark W. Solock, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Louis Perez, defendant, was charged with armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2), aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4), unlawful restraint (Ill. Rev. Stat. 1977, ch. 38, par. 10—3), and aggravated kidnapping (Ill. Rev. Stat. 1977, ch. 38, par. 10—2). At trial, a jury found him guilty of all charges except aggravated kidnapping. The trial court sentenced defendant to imprisonment for a term of 4 to 15 years on the armed robbery charge, 3 to 9 years on the aggravated battery charge, and 1 to 3 years on the charge of unlawful restraint. The sentences were to run concurrently. Defendant appeals from the judgment of conviction, and we affirm.

On appeal, defendant raises the issues of (1) whether the trial court erred in admitting evidence linking him to a street gang; (2) whether his constitutional rights were violated when the assistant State's Attorney commented upon his failure to call certain witnesses; (3) whether the court erred in allowing certain hearsay evidence; and (4) whether he was found guilty beyond a reasonable doubt.

On the evening of September 18, 1977, Gasper Reyes attended a tavern and a social club located in the vicinity of Sawyer and North Avenue, in Chicago. Reyes testified that when he left the tavern to get his car and drive home he was "a little high," but not drunk. He said he was approached by a man named Monie Urdiales outside of the tavern. Urdiales insisted that Reyes give him a ride home. Reyes agreed to do so and drove Urdiales toward California Avenue. As the car approached the intersection of California and Hadden, Urdiales told Reyes to park the car. After Reyes had done so, Urdiales grabbed his arm and forced him to give up the car keys. It was then that defendant Perez approached the car, reached through the window, and held a knife to Reyes' throat.

Reyes testified that he could see defendant's face because of the illumination from the street light above the car. Defendant and Urdiales walked with Reyes into a nearby alley and told him to get into a van. Inside the van was man, a woman, and a baby. Reyes boarded the van along with Urdiales and defendant. While inside the van, Reyes had an additional opportunity to view defendant.

According to the witness, the van was driven to the West 3600 block of Division Avenue. As the van stopped, defendant hit Reyes in the mouth, causing him to lose three or four teeth, become dizzy, and bleed. Defendant then pushed Reyes out of the van and, at knifepoint, took his wallet. Thereafter, defendant, along with the other occupants, left in the van. The witness stated he then went to the house of Irene Mercier.

Irene Mercier testified that at approximately 11:30 p.m. on September 18, 1977, Reyes came to her house at 3715 West Division, bleeding at the

mouth. She stated that Reyes requested her to call the police because he had been beaten and robbed.

Police officers Robert Rodriguez and Nicholas Nehoda responded to the call of Ms. Mercier. Officer Rodriguez testified that Reyes told him he had been robbed by male Latinos whom he knew to be members of the Latin Kings street gang; they had taken $100 from him.

Officer Nehoda testified that Reyes had been drinking, although he could not say for certain that he was drunk. The officer had indicated on his official report that Reyes had been drinking.

Reyes spent 6 or 7 hours in the hospital. He stayed home from work for 3 days due to the extreme pain he was experiencing. Finally, on September 22, 1977, Reyes went to the police station.

Sergeant Joe Rodriguez of the Chicago Police Department testified that he spoke with Reyes at the police station. The sergeant stated that Reyes looked at photographs and identified Monie Urdiales as one of the men who robbed him. Defendant's picture was not among those displayed.

Reyes stated at the police station that the robbers were members of the Latin Kings street gang who frequented the area near California and Division. The police and Reyes cruised through the area and observed eight young Latinos on the street. Reyes identified two of them, Urdiales and defendant, as the men who robbed him.

Defendant denied any involvement in the attack on Reyes. Defendant said that on the night in question he was with his mother and brother.

The jury deliberated and sent the judge a note asking, "Is there any legal reason why the other parties alleged to be in the van could not have been brought in as witnesses?" A verdict of guilty was returned on all counts except the aggravated kidnapping charge.

Defendant argues, first, that it was improper for the trial court to admit evidence linking him to a street gang. Reyes testified as to the facts of the crime perpetrated against him. On direct examination of Reyes, no mention was made of the Latin Kings street gang. However, on redirect examination, the assistant State's Attorney asked Reyes whether he had informed the police that the perpetrators were from the Latin Kings. The trial court sustained defendant's objection to the question. The trial court refused to sustain defendant's motion in limine to exclude any reference to the street gang.

Later in the trial when Investigator Rodriguez testified, he stated that Reyes told him he had been attacked by members of the Latin Kings. Defendant asserts this reference was prejudicial.

■■ Generally, where evidence is relevant and otherwise admissible, it is not to be excluded because it may also have a tendency to prejudice the

accused. (*People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840, 855.) It is not apparent in this case that prejudice resulted from the questioned testimony so as to result in defendant's being found guilty. Even if some prejudice inured to defendant by way of reference to the street gang, we believe it did not result in an inflammation of the jury here so as to sway them from a rational evaluation of the facts in issue.

The next point of contention raised by defendant is that the court overlooked reversible error when the State commented upon his failure to call certain witnesses. The trial court sustained an objection to the assistant State's Attorney's statement that defendant neither called his brother nor his mother to corroborate his alibi testimony.

■■ In *People v. Blakes* (1976), 63 Ill. 2d 354, 359, 348 N.E.2d 170, 174, the Illinois Supreme Court ruled that once a defendant has attempted to assert an alibi defense, the State can inquire into who was present and why the alibi witnesses were not called. The defendant in the case at bar explained his whereabouts during the incident by testifying that on the night in question he was with his mother and brother. Neither relative was called to testify. It would seem that those circumstances would fit within the purview of the *Blakes* decision. Therefore, not only was the statement made by the assistant State's Attorney admissible, defendant received the benefit of having his objection to the comment sustained and the jury instructed to overlook the statement. Any error was then cured.

■■ Further, we find no prejudicial error in the admission of testimony with reference to the out-of-court identification of defendant. Moreover, it is waived as an issue on review due to lack of an objection at trial. *People v. Gray* (1964), 52 Ill. App. 2d 177, 186, 201 N.E.2d 756, 761.

Finally, defendant submits that his conviction should be reversed because he was not proved guilty beyond a reasonable doubt. Defendant's primary argument is that the identification evidence was inadequate because Reyes was the sole witness to give identification testimony.

It is a well-settled rule that a reviewing court may not substitute its judgment for that of the jury on questions regarding the weight of the evidence or the credibility of the witnesses, and we will not reverse a criminal conviction unless evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion, Sr.* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) The testimony of even a single witness, if positive and credible, is sufficient to convict even though contradicted by the accused. *People v. Perkins* (1974), 17 Ill. App. 3d 447, 449, 308 N.E.2d 171, 173.

When Reyes first confronted defendant, they were beneath an illuminated street light. Defendant rode in a van with Reyes for approximately 10 minutes. Reyes recalled defendant striking him in the mouth,

putting a knife to his throat, and stealing his wallet. Reyes had several opportunities to view defendant.

Defendant refers to the police report which indicated Reyes had been drinking on the evening of the incident. He would thereby challenge the credibility of the witness. It is the function of the trier of fact, and not the court of review, to determine the credibility of witnesses and, where the evidence is merely conflicting, the reviewing court will not substitute its judgment for that of the trier of fact. *People v. Perkins* (1974), 17 Ill. App. 3d 447, 449, 308 N.E.2d 171, 173.

■■ We conclude from the record that there was ample opportunity for the witness to view the defendant so that he could make a positive identification. There is nothing apparent in the record so improbable as to merit disturbance of the decision of the trial court.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and JIGANTI, JJ., concur.