THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PATRICK McGREW, Defendant-Appellant.

First District (1st Division) No. 82—2610

Opinion filed October 29, 1984.

Steven Clark, of State Appellate Defender's Office, and Jeffry S. Spears, of Winston & Strawn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Frank G. Zelezinski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

The defendant, Patrick McGrew, was found guilty of murder following a bench trial and sentenced to life imprisonment. On appeal, defendant raises these issues: (1) whether the trial court erred in denying defendant's motion to suppress evidence obtained from the search of his residence where one co-occupant consented but another co-occupant objected to the search; and (2) whether the trial court erred in finding that the police had probable cause to arrest defendant.

The record discloses that the victim, Mrs. Oral Williams, was found strangled to death in her apartment on April 13, 1982. Dorothy Henderson, a neighbor of the victim, testified that when she was returning from the grocery store at about 12 or 12:30 p.m. on April 13, she noticed a car parked in an unusual manner behind their building, blocking her father's car. The car was an older model green four-door Ford with yellow fog lights. After she returned to her home, she saw a man come out of the victim's building carrying two radios and put the radios in the green Ford. She also saw the man leave the victim's residence with a television. Henderson testified that after she saw the man remove the radios she went to check on the victim's son. She knocked on the victim's door and the man answered. When she asked to see the victim, the man told her that the victim was sleeping and would see her later. Henderson returned home and called the police. Before the police arrived, she saw the man leave the victim's home and drive away.

Officer Roy Isabell testified that he arrived at the victim's home after receiving the burglary call. He spoke to Dorothy Henderson and to her sister, who had also observed the man, and they gave him a description of the man and the car he was driving. Officer Isabell en-

tered the apartment and found it in disarray. The victim was lying on the floor of the bedroom. She had been strangled with an electrical cord. Detective Dennis McGuire of the Chicago police department arrived at the scene at about 1:30 p.m. He spoke to the Henderson sisters and heard their description of the man. While the officers were in the victim's apartment, the telephone rang. Isabell answered the phone and spoke to an individual who identified himself as "Pat" and asked if he could help in some way. Isabell told him to call back. Later, the victim's telephone rang a second time. McGuire asked when defendant had last seen the victim. Defendant told McGuire that he had spoken to the victim that morning and that everything was fine. Defendant also told McGuire that he was going to drive the victim's son to the hospital but could not because his car had broken down. McGuire asked what type of car he had and defendant replied that he had a green four-door 1974 Ford LTD. Defendant also told the officer his name and address.

Detective McGuire and two other detectives left the victim's home and went to the address given by the defendant. They observed a green Ford matching the description given by the witnesses parked in front of the defendant's house. They were unable to observe if the car had yellow lights, because the lights were covered by a grill when they were not activated. After speaking with the defendant and having the defendant show them his car, the officers placed the defendant under arrest and took him to the police station.

McGuire and two other detectives then returned to defendant's home where they spoke to Preston Teisley. They asked Teisley if they could search the home. Teisley is the common law husband of the defendant's mother-in-law, Bessie McGrew, the owner of the house. They informed Teisley of the investigation and asked him to consent to a search of the home. Teisley agreed to let them search the house and signed a written consent form. Defendant's wife, Annette McGrew, who was present for this conversation, testified that at this point she told the police they could not search the house because they did not have a search warrant and would have to wait until her mother got home. She testified that Teisley told her that the officers could search the building, and after Tiesley signed the form the officers began to search. McGuire testified that he did not recall this conversation.

After the officers had searched the first and second floors of the house but found no evidence, they came to the door to the basement. Defendant's wife stood in front of the doorway and blocked their entrance. She told them they could not go down there until her mother

got home. The officers told her that they had permission from Teisley to search the basement, but she still refused to move. Teisley then told her that he had given his permission and therefore she was required to let them go into the basement. Annette testified that the police physically moved her out of the way. McGuire testified that "she reluctantly moved away from the door."

The officers searched the basement and recovered bloodstained tennis shoes and clothes matching those described by the Henderson sisters. They also found a car battery and two radios. Following the search, Annette was taken to the police station.

At the police station, defendant was given his *Miranda* rights. He initially denied any knowledge of the homicide. When confronted with the evidence recovered from his basement, however, he admitted being at the victim's house and seeing her dead but denied killing her. At a second interrogation approximately two hours later, defendant confessed to murdering the victim and agreed to sign a written statement. Defendant stated that he knew the victim had a television set, stereo and radios. He went to her home to rob her because he was in debt for $20. When he went to her home, she let him in. As they were having cake in the kitchen he was able to grab her from the back and choke her. He began to collect her valuables when someone came to the door. He told the party that the victim was sleeping and soon thereafter left without taking the stereo. On his way home he sold the television to pay off his debt and made a profit of $50.

Defendant first contends that the trial court erred in denying defendant's motion to suppress the evidence seized from his house. Defendant contends that the warrantless search was illegal because a co-occupant's objections to a search prevails over another co-occupant's consent. Here, the trial court found that Teisley's consent to the warrantless search was voluntary and was effective. It is well settled that the consent of one co-occupant who possesses common authority over the premises to a warrantless search is valid as against an absent nonconsenting occupant with whom authority over the premises is shared. *United States v. Matlock* (1974), 415 U.S. 164, 170, 39 L. Ed. 2d 242, 249, 94 S. Ct. 988, 992-93.

Defendant contends, however, that where two occupants are present and one consents and the other objects, the objecting occupant prevails and the police must seek a search warrant. Defendant points out that this issue is one of first impression in Illinois. Defendant relies upon cases from several other jurisdictions which have considered this issue and determined that the police may not conduct a warrantless search where one of the occupants explicitly objects to

the search even though another occupant freely consents. *United States v. Robinson* (7th Cir. 1973), 479 F.2d 300, 303; *Lucero v. Donovan* (9th Cir. 1965), 354 F.2d 16, 20-21; *Tompkins v. Superior Court* (1963), 59 Cal. 2d 65, 378 P.2d 113, 27 Cal. Rptr. 889; *Silva v. State* (Fla. 1977), 344 So. 2d 559; *Dorsey v. State* (1967), 2 Md. App. 40, 232 A.2d 900. But see *United States v. Sumlin* (6th Cir. 1977), 567 F.2d 684.

The State argues that the defendant has waived consideration of this issue by his failure to raise it during the hearing on the motion to suppress evidence seized from the house, at trial or in his post-trial motion. In addition, the State argues that any claim of violation of constitutional rights suffered because the police went ahead with their search may be raised only by Annette McGrew, and that defendant himself lacks standing to raise this issue under the authority of *Matlock* since *Matlock* holds that the absent co-occupant cannot complain if a present co-occupant gave consent to a warrantless search. The State also contends that, in any event, the warrantless search of the premises was valid because of exigent circumstances.

Defendant replies that he did, in fact, raise the issue of the validity of the search in his motion to suppress and in his post-trial motion. Defendant also argues that in one of the cases from another jurisdiction, *Dorsey v. State* (1967), 2 Md. App. 40, 232 A.2d 900, the court allowed the objections of a co-occupant to a search to be raised by an absent co-occupant.

A review of defendant's arguments at the motion to suppress hearing reveals that he failed to raise the issue of whether Annette's objections to the search rendered the search illegal. At the hearing defense counsel argued only that Teisley's consent was not freely given because he was allegedly told by the police that if he did not give his consent they would obtain a warrant anyway and Teisley feared that when they returned they would tear the house apart. Defense counsel stated during argument on his motion to suppress, "The motion to suppress evidence deals with the purported, in our opinion, purported consent of Preston Teisley. We don't dispute that Mr. Teisley would have had authority to consent ***." Defense counsel argued that even though Teisley had testified that his consent to the search was voluntary, the circumstances surrounding that consent showed that it was not voluntary. Although during her testimony at the motion to suppress hearing. Annette stated that she did not consent to the search, defense counsel did not mention this point at all during his argument. Further, defendant's post-trial motion stated only, "The court erred in denying defendant's MOTION TO SUPPRESS EVI-

DENCE."

■ Issues, including constitutional issues, not raised in the trial court are generally considered waived on appeal and cannot be urged as grounds for reversal on review. (*People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871.) The Code of Criminal Procedure of 1963 requires a written motion for a new trial specifying the grounds therefore. (Ill. Rev. Stat. 1979, ch. 38, par. 116—1.) An ambiguous statement such as was contained in defendant's motion for a new trial is usually insufficient to preserve specific grounds for appeal. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) Failure to raise with specificity the issue posted on appeal denies the trial court the opportunity to correct alleged errors and to give the reviewing court the benefit of the trial court's judgment. (*People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76.) Here, the appellate court is hampered by the lack of a finding of fact with respect to whether Annette acquiesced in Tiesley's consent to the search. In light of the conflicting testimony on that point we cannot assume that one co-occupant consented and the other co-occupant did not consent to the search for the purpose of reaching the interesting issue presented on appeal by defendant. Although a reviewing court may consider plain errors or defects affecting substantial rights which have not been properly preserved for review (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856), we are not convinced that it is appropriate to do so under the facts and circumstances of this case.

■ Defendant's second contention is that the police lacked probable cause to arrest him. Testimony at the hearing on defendant's motion to quash his arrest revealed that three police officers went to defendant's home immediately upon leaving the murder scene. They observed an automobile matching the suspect's parked in front of defendant's home. Teisley admitted the officers into the house, and almost immediately the defendant came down from upstairs dressed only in a bathrobe. The officers asked defendant if they could inspect his car and defendant said yes. Teisley testified that defendant asked if he had to get dressed and one of the officers responded that he was afraid so. Two police officers accompanied defendant upstairs while he dressed. The officers and defendant then went outside to look at defendant's car. The car's battery was missing, and defendant told the officers that he had not driven the car since the day before. One of the officers touched the engine block and noticed that it was still warm, indicating that the car had been driven recently. The officers also noticed a chain on the front seat of the car. One of the witnesses at the murder scene told the police that she saw the suspect put a

chain in the front seat of his car. The officers then told defendant that he would have to accompany them to the police station for questioning. Defendant became violent. He was restrained, handcuffed and taken to the police station.

Defendant contends that the facts available to the police when they told defendant to get dressed were insufficient to constitute probable cause to arrest. The State argues that the officers' initial request of the defendant constituted an investigatory detention which may be justified by less than probable cause. (*People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327.) The State contends that based upon the description of the suspect and the suspect's car as well as the fact that defendant had called the murder scene and identified himself, the officers had sufficient articulable facts to create a reasonable suspicion that defendant had committed the crime. (*People v. Smithers* (1980), 83 Ill. 2d 430, 415 N.E.2d 327.) Further, the State asserts that the officers' conduct in asking defendant to show them his car and in accompanying him while he dressed did not constitute an unreasonable intrusion upon defendant. (*People v. Pritchett* (1979), 75 Ill. App. 3d 127, 393 N.E.2d 1157.) Probable cause to arrest defendant, the State argues, existed after the officers had observed incriminating evidence in the car. Defendant contends to the contrary that his arrest occurred at the time the police told him to get dressed. Defendant relies upon Officer McGuire's police report, which stated that when the defendant appeared in his bathrobe, the officers requested that he get dressed and accompany them to the police station. At the hearing, McGuire testified that when defendant first came downstairs they asked him if they could inspect his car, and some time later they asked him to go to the station house. On cross-examination, however, the officer admitted that he either made or adopted the police report.

Defendant argues that any request to go to the police station implies an obligation to do so and, therefore, constitutes an arrest unless the police clearly state that compliance is entirely voluntary. (*People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228.) Therefore, defendant contends whether probable cause to arrest existed must be determined from the facts known to police at the time they entered defendant's house.

It is evident from the trial court's consideration of the issue of probable cause that the court thought that an arrest first occurred after defendant had shown the officers his car. The trial court apparently resolved the conflicting testimony as to what was said to the defendant in the prosecution's favor. The resolution of conflicting evi-

dence is left to the trial court, whose decision will be accepted on review unless clearly unreasonable. (*People v. Peterson* (1959), 17 Ill. 2d 513, 515, 162 N.E.2d 380, 381.) We are not persuaded that the trial court's implicit determination of when defendant's arrest occurred is against the manifest weight of the evidence. *People v. Holloway* (1981), 86 Ill. 2d 78, 91, 426 N.E.2d 871, 877.

We note that the testimony of other witnesses to the effect that defendant cooperated with the police until after he viewed his car supports the conclusion that defendant was not told to come to the police station until that time. Defendant has not challenged the existence of probable cause to arrest once the officers viewed the automobile, and the record amply supports the trial court's determination that probable cause existed then. Accordingly, we affirm the trial court's denial of defendant's motion to quash his arrest.

Affirmed.

BUCKLEY, P.J., and McGLOON, J., concur.