THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL VISNACK *et al.*, Defendants-Appellants.

First District (2nd Division) Nos. 81—2952, 81—2976, 81—3068 cons.

Opinion filed May 21, 1985.—Rehearing denied August 20, 1985.

James J. Doherty, Public Defender, of Chicago (Robert Guch, Assistant Public Defender, of counsel), for appellant James Kubick.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant Daniel Visnack.

Brian A. David, of Chicago, for appellant Randall Weidner.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James Veldman, and Karyn Stratton, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant Daniel Visnack was convicted of murdering his wife, Sharon. He was also convicted of soliciting the murder and of conspiracy to commit the murder. He was sentenced to natural life imprisonment. He appeals his conviction and sentence. Defendants Randall Weidner and James Kubick were convicted of rape, conspiracy to commit murder and murder. Defendant Weidner was sentenced to concurrent prison terms of 80 years for murder and 60 years for rape. Defendant Kubick was sentenced to consecutive prison terms of 40 years for murder and 30 years for rape. All three defendants were tried jointly before a jury.

On the morning of August 7, 1979, Sharon Visnack's body was found in the Calumet City apartment she shared with her husband, defendant herein, Daniel Visnack. It was subsequently determined that she had been raped and had died of asphyxiation, the result of having two plastic garbage bags fastened around her head with duct tape. The State sought to prove that defendant Daniel Visnack had hired Weidner and Kubick to rape and kill his wife. All three defendants confessed to their parts in the murder. Visnack and Weidner moved to suppress their confessions, and their motions were denied after hearings before the trial court. At trial, all three defendants denied involvement with the crime.

Defendant Visnack contended that his confession had been coerced and that his waiver of his *Miranda* rights was ineffective because he had not been informed that his attorney wished to confer with him at the time he confessed. Defendant Weidner contended that his confession had been coerced. The trial court denied defendants' motions to suppress.

Much of the testimony at defendant Visnack's suppression hearing was devoted to determining the time at which defendant had given his statement to the police and whether defendant's attorney had been waiting at the police station to see him during this time. However, examination of this question was limited by the court because defendant Visnack's motion to suppress contained no allegation that his attorney had been denied access to him during his interrogation. The testimony established that defendant was taken to the police station for questioning at approximately 12 p.m. on August 10, 1979.

Defendant was given his *Miranda* rights and was questioned.

Officer Kelly Matthews testified that when defendant was told that the police had obtained information which indicated that he had solicited the murder of his wife, and that two persons had been arrested in connection with the murder, defendant began to cry and stated that his wife deserved what she got because she was unfaithful. These statements were not recorded or transcribed. A thirty-minute conversation followed, whereupon the State's Attorney's office was contacted. Three assistant State's Attorneys, Timothy McMahon, Michael Madden and Cliff Johnson, arrived at the station about an hour later. Defendant was again advised of his *Miranda* rights and gave a statement confessing to the crime. This statement was tape-recorded. Defendant completed his confession at approximately 2:45 p.m.

Defendant Visnack's motion to suppress his statements contained numerous allegations of threats and coercion by the police during his interrogation. Officer Matthews denied these allegations. Matthews also testified that defendant did not ask to see a lawyer, although Matthews knew that defendant was represented by attorney William Freeman. Matthews went on to testify that he saw defendant's father and brother in the police station foyer between 12:30 and 1 p.m. This testimony was corroborated by that of Officer Ronald Dorsey, Matthews' partner in the investigation, who had been excluded from the courtroom during Matthews' testimony. Dorsey did not remember seeing defendant's father and brother at the station, but saw attorney Freeman after defendant had confessed.

Assistant State's Attorney Michael Madden testified that he arrived at the police station at approximately 1:30 p.m., and that he did not hear defendant being threatened or coerced by the police. He also testified that defendant did not request an attorney and that defendant was not asked if he had retained counsel. Madden believed the taped confession began between 2 and 2:15 p.m. He stated that he saw Freeman in the waiting area of the police station after defendant's confession had been given, and that the confession ended at 2:45 p.m. Assistant State's Attorney McMahon's testimony concerning defendant's confession conformed to that of Madden.

Defendant's father testified that he went to the police station after defendant had been taken there and called Freeman to obtain Freeman's representation for defendant. Defendant's father did not reach Freeman, but left a message on Freeman's answering machine. Defendant's father's testimony as to what time he called Freeman was uncertain. He stated at various points in his testimony that he

first called Freeman at 12:05, 2 and 4 p.m.

Defense attorney Freeman testified that he had received defendant's father's call sometime after 1 p.m. and that he thought he had arrived at the police station at approximately 1:30. He stated that he requested a conference with defendant, but was kept waiting until shortly before 3, when he was told that defendant had confessed.

The trial court found that Freeman had arrived at the station "at or about—well, certainly after 2:00 o'clock," and that by 2:45 p.m., defendant had "spilled his guts," and denied defendant's motion to suppress. The court also denied defendant Weidner's motion to suppress. On appeal, defendant Visnack contends that the waiver of his *Miranda* rights was not made knowingly and intelligently because he had not been informed that his attorney had requested consultation with him. Defendant Weidner contends that his confession was involuntary because it had been obtained as the result of threats and coercion by the police. Several additional issues are raised concerning the proceedings at trial.

■ Defendant Visnack first contends that the trial court erred in denying his motion to suppress his confession on the ground that he had not been informed that his attorney was in the police station demanding to see him. However, defendant failed to raise this argument in his motion to suppress, and in his post-trial motion. Defendant's motions relating to his confession contained only general allegations that the confession was involuntary and had been obtained in violation of defendant's *Miranda* rights. The motions do not mention defendant's claim that he was not informed that his lawyer wanted to speak with him.

"Issues, including constitutional issues, not raised in the trial court are generally considered waived on appeal and cannot be urged as grounds for reversal on review." (*People v. McGrew* (1984), 128 Ill. App. 3d 464, 469, 470 N.E.2d 1157.) The Code of Criminal Procedure of 1963 requires a written motion for a new trial specifying the grounds therefore. (Ill. Rev. Stat. 1979, ch. 38, par. 116—1.) Failure to raise with specificity the issues posed on appeal denies the trial court the opportunity to correct alleged errors and to give the reviewing court the benefit of the trial court's judgment. (*People v. Irwin* (1965), 32 Ill. 2d 441, 443-44, 207 N.E.2d 76.) Because defendant failed to address the particular issue now presented for appellate review, this issue had been waived.

We will, however, consider this issue as one affecting substantial rights under Supreme Court Rule 615(a). 87 Ill. 2d R. 615(a); *People v. Foster* (1979), 76 Ill. 2d 365, 380, 392 N.E.2d 6.

In the instant case, it is undisputed that defendant was informed of his *Miranda* right to consult with an attorney and that he waived this right. It is also undisputed that defendant was never informed by his interrogators that his lawyer was present and seeking the opportunity to consult with him.

If defendant's attorney had in fact been at the police station asking to speak with defendant, and if the police had not informed defendant of this fact, any statements obtained from defendant after the police themselves knew of counsel's efforts to reach defendant could not be rendered admissible on the theory that defendant had knowingly and intelligently waived his right to consult with counsel. (*People v. Smith* (1982), 93 Ill. 2d 179, 187, 189, 442 N.E.2d 1325, *cert. denied* (1983), 461 U.S. 937, 77 L. Ed. 2d 312, 103 S. Ct. 2107.) The resolution of this issue therefore involves the question of whether defendant's attorney was in fact present at the police station and asking to speak with defendant prior to defendant's confession, because any statement obtained from defendant once the police learned of counsel's presence is inadmissible. 83 Ill. 2d 179, 187.

The trial court in the instant case heard the testimony of several witnesses in its attempt to determine the time at which defendant's counsel appeared at the police station. The testimony of the police officers and assistant State's Attorneys established that the assistant State's Attorneys had arrived at the station between 1:30 and 1:45 and had not seen defendant's attorney, and that defendant's confession was recorded over a half-hour period between 2:15 and 2:45. Therefore, if defense counsel had arrived at the station before 2:15 p.m., defendant's confession should have been suppressed.

Attorney Freeman testified that he received the call on his answering machine sometime after 1 and that he thought he had arrived at the station at approximately 1:30. He said he informed the receptionist that he represented Daniel Visnack and that he wished to speak with him, but that he was kept waiting until shortly before 3, when two police officers and three assistant State's Attorneys emerged from the station and told him that defendant had confessed. Freeman testified that one of the assistant State's Attorneys said that he had not known that Freeman represented defendant and that he would have allowed Freeman to see defendant had he known that Freeman was defendant's attorney.

Defendant's brother testified that he and his father went to the station between 12:30 and 1 and asked to see defendant and that defendant's father then called Freeman and left a message on his answering machine. Defendant's father testified as to the time he called

Freeman, but his testimony was uncertain and conflicting, and defendant characterizes it in his reply brief as "worthless."

The trial court found that defense counsel had arrived "at or about—well, certainly after 2:00 o'clock," and that the police had not been aware of his presence at the time defendant began his confession.

■ It is well established that is the function of the trier of fact, and not the court of review, to determine the credibility of witnesses, and that where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Perez* (1981), 94 Ill. App. 3d 377, 381, 418 N.E.2d 969.) In the instant case, all the evidence as to time was uncertain; none of the witnesses was sure of exactly what time any of the events in question occurred. The relevant time periods were short and closely spaced, and the entire issue hinged on differences between the testimony of witnesses of not more than half an hour. Under these circumstances, we cannot say that the trial court erred in making its finding as to the time defendant's attorney arrived at the station, especially in light of defense counsel's testimony that he received the call from his answering machine "sometime after 1:00" and that he could only approximate the time of his arrival at the police station. We therefore will not substitute our judgment for that of the trial court.

■ Defendant Visnack also contends that his waiver of his *Miranda* rights was not made knowingly and intelligently because his attorney had not been called before defendant was questioned. Defendant had been taken to the police station on August 7, to give a life-and-death statement about his wife. He was not under arrest. At that time, defendant's father called attorney Freeman and Freeman went to the police station, where he found that defendant had become ill and had been taken to a hospital. Freeman told a police officer that he was defendant's attorney, that he wanted to be present during any questioning of defendant and that if the police wished to question defendant they should contact him so that he could bring defendant to the station.

Freeman then went to the hospital and informed defendant that he had been retained to represent defendant in connection with the death of his wife, and that if the police wanted to speak with defendant, he should contact Freeman.

Three days later, on August 10, the police had received information implicating defendant in the murder, and defendant was taken to the station for questioning. He was informed of his *Miranda* rights, waived them, and was questioned. He was not told that his lawyer

had asked on August 7 to be present during his questioning.

Defendant argues that the instant case is controlled by *People v. Smith* (1982), 93 Ill. 2d 179, 442 N.E.2d 1325, *cert. denied* (1983), 461 U.S. 937, 77 L. Ed. 2d 312, 103 S. Ct. 2107, in which our supreme court held that a defendant's waiver of his fifth amendment right to consult with an attorney was not voluntary where defendant had not been informed that his attorney had requested consultation with him. However, in *Smith*, the defendant was under arrest for murder and in police custody at the time his attorney told the police that she wished to speak with him, and the defendant had not seen his attorney before giving an incriminating statement and therefore was not aware that she wished to speak with him. In contrast, defendant in the instant case was not under arrest at the time his attorney first told the police that he wished to be present if defendant was questioned, and the attorney had visited defendant on that day and told him personally that he wished to be present if the police sought to question him. In the instant case, therefore, defendant was aware that he was represented by counsel and that his counsel had expressed a desire to be present during any police questioning. Because, contrary to the factual situation in *Smith*, defendant in the instant case was actually aware that his lawyer wished to be present during questioning, we find that defendant's waiver of his right to have his lawyer present was knowingly and intelligently made.

Defendant's contention that his sixth amendment right to counsel (U.S. Const., amend. VI) was violated by his interrogation is without merit because adversary judicial proceedings had not been initiated at that time. See *People v. Martin* (1984), 102 Ill. 2d 412, 419, 466 N.E.2d 228, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334; *People v. Finklea* (1983), 119 Ill. App. 3d 448, 451, 456 N.E.2d 680.

■ Defendant next contends that the trial court improperly precluded him from presenting his fifth and sixth amendment claims by restricting his cross-examination of prosecution witnesses concerning what occurred at the police station prior to and during his interrogation. However, an examination of the record shows that defendant's cross-examination was limited only when he attempted to inquire as to the time defense counsel arrived at the police station, a matter which was beyond the scope of defendant's motion to suppress and the direct examination of the witnesses, and therefore not properly pursued on cross-examination in the hearing on the motion to suppress. The scope of cross-examination is a determination which rests largely in the discretion of the trial court. (*People v. Kline* (1982), 92

Ill. 2d 490, 504, 442 N.E.2d 154.) In the instant case, we find that the trial court properly prohibited defendant from questioning witnesses as to immaterial matters.

■ Defendant next contends that he was denied his sixth amendment right to counsel where he was precluded from consulting with his attorney during a lunch recess in the hearing on defendant's motion to suppress. However, an examination of the recent decisions of this court shows that a defendant's sixth amendment right to counsel is not violated in such cases where only a short recess is involved and defendant and his attorney have not requested consultation with each other. (*People v. Sanders* (1984), 129 Ill. App. 3d 552, 564-65, 472 N.E.2d 1156; *People v. Moore* (1984), 128 Ill. App. 3d 505, 515-16, 470 N.E.2d 1284.) An examination of the colloquy in the record as to this incident reveals that neither defendant nor his attorney indicated a desire to consult during the lunch recess. We therefore find that defendant's sixth amendment right to counsel was not violated by the trial court's ruling prohibiting defendant from speaking with anyone during the lunch recess.

■ Defendants Visnack and Kubick next contend that they were denied a fair trial where they were tried jointly even though their defenses were antagonistic. "The general rule is that persons jointly indicted should be jointly tried, and separate trials are required only when the defenses are so antagonistic that a fair trial can be achieved only through severance." (*People v. Dorsey* (1980), 88 Ill. App. 3d 712, 717, 412 N.E.2d 1132.) The trial court's decision whether to grant defendant's motion to sever will not be reversed absent an abuse of discretion. *People v. Daugherty* (1984), 102 Ill. 2d 533, 541, 468 N.E.2d 969.

In the instant case, it is clear that the defenses of the defendants were not antagonistic. None of the defendants testified, and therefore there were no accusations that other defendants were the culpable parties. Each defendant's defense was that none of the three was involved in the murder. Our examination of the record reveals no element in the defenses of any of the defendants which is antagonistic to any other defendant. We therefore find that the trial court did not abuse its discretion in denying defendants' motions to sever.

■ Defendants Visnack and Kubick next contend that the jury selection procedure followed by the trial court was inadequate where the court refused to ask questions sufficient to elicit the bias and prejudices of the prospective jurors.

In order to successfully challenge the adequacy of *voir dire*, it is not necessary for the defendant to show that members of the jury

were in fact prejudiced. (*United States v. Dellinger* (7th Cir. 1982), 472 F.2d 340, 367.) The focus, rather, is on whether the procedure used for testing impartiality created a reasonable assurance that prejudice would be discovered if present. (472 F.2d 340, 367.) "[A] failure to permit pertinent inquiries to enable a party to ascertain whether the minds of the jurors are free from bias or prejudice which would constitute a basis of challenge for cause, or which would enable him to exercise his right of peremptory challenge intelligently, may constitute reversible error." *People v. Thomas* (1980), 89 Ill. App. 3d 592, 599, 411 N.E.2d 1076, citing *People v. Lobb* (1959), 17 Ill. 2d 287, 300, 161 N.E.2d 325.

Defendants argue that the trial judge erred in refusing to ask questions to elicit responses which would have demonstrated prejudicial bias relative to defendants' right to refrain from testifying without unfavorable inference, defendants' not having to prove his innocence, defendants' not having to prove who committed the offense, the necessity of considering each defendants' case separately, and the importance of not drawing unfavorable inferences from the fact of defendants' arrest and indictment.

Examination of the transcript of *voir dire* included in the record shows that the trial court, at defense counsel's request, informed each venire of prospective jurors that the defendants need not prove their innocence and that the burden was upon the State to prove the defendants guilty beyond a reasonable doubt. Additionally, the record reveals that the court also cautioned the jurors throughout the trial that certain evidence was being introduced only against certain defendants. Although defendant claims that it was essential that the jurors be questioned about the need to keep the evidence against each defendant separate, this contention is unsupported by citation to precedent, and we believe that the procedure followed by the court in admonishing the jury was proper and was, in fact, more effective in assuring that the jurors considered the evidence against each defendant separately than questioning them prior to trial, before they had learned the nature of the evidence, would have been. The record also shows that the jurors were told that the charges against the defendants were merely formalities and were not to be taken as evidence of guilt against defendant.

■ Defendants argue that the trial court erred in not questioning prospective jurors as to their attitude toward defendants' right to refrain from testifying. Defense counsel requested, prior to *voir dire*, that the court ask such a question of the prospective jurors. The court agreed to ask such a question, but neglected to do so, without objec-

tion from defense counsel. Although the failure to question or instruct prospective jurors on this point has been considered reversible error (*People v. Zehr* (1984), 103 Ill. 2d 472, 477-78, 469 N.E.2d 1062), defendants have waived the issue by their failure to make a timely objection, and we cannot say that plain error exists here, in light of the overwhelming evidence against defendants.

■ Defendants Visnack and Kubick each contend, citing *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, that they were denied a fair trial of the trial court's admission into evidence of each other's confession, which contained inculpatory statements. The State argues that the confessions were properly admitted because the jury was given limiting instructions and because the confessions were interlocking.

In *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525, our supreme court stated, in considering *Bruton*:

"Both the Supreme Court and this court have subsequently determined that *Bruton* does not require 'reversal of a defendant's conviction when the defendant himself has confessed and his confession "interlocks" with and supports the confession of his codefendant.' *Parker v. Randolph* (1979), 442 U.S. 62, 64, 60 L. Ed. 2d 713, 718, 99 S. Ct. 2132, 2135; *People v. Rosochacki* (1969), 41 Ill. 2d 483." 97 Ill. 2d 1, 21.

In the instant case, both Visnack's and Kubick's confessions "interlock." Therefore, we find that the trial court did not err in admitting the confessions.

■ Defendant Visnack next contends that error resulted from the admission into evidence of a hearsay statement through the confession of defendant Weidner, which was intended to provide a basis for the State's theory of defendant's motive for killing his wife. Weidner's confession contains a statement that defendant told him he wanted his wife killed for her life insurance. The State contends that no prejudice to defendant Visnack resulted from the admission of the statement, because the confession of Weidner was not admitted as evidence against Visnack.

Because defendant Visnack has not raised this issue in his posttrial motion, it is waived. (*People v. McGrew* (1984), 128 Ill. App. 3d 464, 469, 470 N.E.2d 1157.) Even were we to consider this contention under the plain error language of Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), we would find that reversal is not warranted by the admission of the statement implicating Visnack because David Sadowski, a former classmate of Visnack, testified to the same matter. Even if hearsay testimony is improperly admitted into evidence, reversal is

not required where the same matter has been proven by independent and properly admitted evidence. *People v. Horton* (1973), 14 Ill. App. 3d 957, 963, 304 N.E.2d 21.

■ Defendants Visnack, Weidner and Kubick next contend that on numerous occasions during the State's closing arguments, the prosecutors made improper remarks which prejudiced defendants. However, of the approximately 15 instances of improper argument complained of by defendants, only five were objected to at trial, and only one was raised in defendants' post-trial motions. Any irregularities in closing argument not raised in a motion for a new trial are deemed waived. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358, 418 N.E.2d 739.) Although we may consider plain errors or defects affecting substantial rights which have not been properly preserved for review (*People v. Pickett* (1973), 54 Ill. 2d 280, 282-83, 296 N.E.2d 856; *People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77; 87 Ill. 2d R. 615(a)), we find that the errors complained of in the instant case do not approach the level of error required for consideration under Supreme Court Rule 615(a).

In addition, we find that the one allegedly improper statement which defendants have preserved for review, the State's reference to defense counsel as "hired guns," was rendered harmless by the trial court's admonishment of the jury to disregard it, and therefore that no prejudice resulted to defendants from this comment.

■ Defendant Visnack next contends that his sentence of natural life imprisonment was excessive because the trial court failed to consider his potential for rehabilitation. However, an examination of the transcript of defendant's sentencing shows that the trial court gave proper consideration to this factor.

Defendant Visnack also argues that his sentence constituted an abuse of discretion because it was unfairly disparate to those of his codefendants. Defendant contends that he was less culpable in the commission of the crimes than his codefendants.

A disparity in sentences is appropriate where the defendant receiving the more severe sentence was the moving force in the commission of the crime. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 573, 400 N.E.2d 436, *cert. denied* (1981), 449 U.S. 1077, 66 L. Ed. 2d 799, 101 S. Ct. 855.) In the instant case, defendant Visnack was convicted of soliciting the murder of his wife, and may therefore appropriately be sentenced to a more severe term of imprisonment than his codefendants, who committed the murder at his behest.

■ Defendant Visnack finally contends that the trial court improperly considered the offenses of solicitation and conspiracy to com-

mit rape in imposing his sentence, where defendant was in fact acquitted of those charges. However, the record shows that the trial court did not consider these offenses in reaching its decision as to defendant's sentence. Although the court stated:

"I understand that he didn't tell the other two to go out and kill her in such a brutal manner. He didn't tell them directly. But, there was evidence that the actual killing had—let it be known to them or it was made known to them that they could kill Sharon, but bloodlessly, but could also take some liberties, to put it mildly,"

it is apparent that this comment merely pertains to the fact that defendant did not care how his wife was killed, as long as there was no blood. Defendant Visnack's final contention is therefore without merit.

▇▇▇ Defendant Weidner contends that his confession was involuntary and should have been suppressed. Defendant claims that his youth, mental condition and inexperience in criminal matters, combined with coercive psychological tactics used by the police to induce his confession, caused him to involuntarily waive his *Miranda* rights.

Defendant argues that, because he was 17 years old at the time of his arrest, the police were required to notify his parents under section 3—2 of the Juvenile Court Act. (Ill. Rev. Stat. 1979, ch. 37, par. 703—2.) However, this section applies only to juveniles taken into custody pursuant to section 3—1 of the Act. (Ill. Rev. Stat. 1979, ch. 37, par. 703—1.) Defendant in the instant case was not arrested pursuant to a petition in the juvenile court, but was simply arrested for murder and was therefore subject to the jurisdiction of the criminal courts.

▇▇▇ Defendant also argues that his confession was involuntarily given. "Whether a statement was voluntarily given must be determined from 'the totality of the circumstances' (*People v. Prim* 53 Ill. 2d 62, 70) and consideration must be given to 'both the characteristics of the accused and the details of the interrogation.' *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 36 L. Ed. 2d 854, 862, 93 S. Ct. 2041, 2047." *People v. Simmons* (1975), 60 Ill. 2d 173, 179, 326 N.E.2d 383.

An examination of the trial court's comments and findings in the instant case reveals that the trial court took great care to consider all the facts urged by defendant, including defendant's age and the testimony of his psychiatric expert, and found that defendant had knowingly waived his *Miranda* rights and therefore that his confession was given voluntarily. The court's conclusions are supported by the record, and we find no error in them. See *Haley v. Ohio* (1948), 332 U.S. 596, 599, 92 L. Ed. 224, 228, 68 S. Ct. 302, 304; *People v. Simmons*

(1975), 60 Ill. 2d 173, 180-81, 326 N.E.2d 383.

 Defendant Weidner also contends that the trial court improperly excluded the testimony of a priest concerning a post-interrogation conversation the priest had with defendant wherein defendant stated that he had confessed because he had been threatened by the police. The trial court found this testimony to be inadmissible hearsay. Defendant argues that it is not hearsay.

"A statement made by a defendant in custody after his arrest that is offered in his favor is not an admission and is subject to objection on hearsay grounds." (*People v. Garth* (1975), 31 Ill. App. 3d 716, 719, 334 N.E.2d 359; *People v. Colletti* (1968), 101 Ill. App. 2d 51, 55, 242 N.E.2d 63, *cert. denied* (1969), 396 U.S. 927, 24 L. Ed. 2d 225, 90 S. Ct. 259.) Under the hearsay rule, a party is excluded from proving his own out-of-court statements (*People v. Harman* (1984), 125 Ill. App. 3d 338, 341, 465 N.E.2d 1009), and such statements may not be used by a defendant as substantive evidence. (*People v. Barnes* (1982), 107 Ill. App. 3d 262, 267, 437 N.E.2d 848; *People v. Garth* (1975), 31 Ill. App. 3d 716, 719, 334 N.E.2d 359.) The statement offered by defendant here was made by him and was offered in his favor; therefore, it is hearsay and was properly excluded by the trial court.

For the reasons expressed herein, the convictions of all defendants are affirmed.

Affirmed.

PERLIN and HARTMAN, JJ., concur.