(No. 54575.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. DAN W. SMITH, Appellant.

*Opinion filed September 17, 1982.—Rehearing
denied November 24, 1982.*

Mary Robinson, Deputy Defender, and Josette Skelnik, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield, and Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko and William L. Browers, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

Dan W. Smith, the defendant, was convicted of murder and armed robbery after a jury trial in the circuit court of Ogle County. He was sentenced to life imprisonment for the murder and to 50 years for the armed robbery. Before trial, the defendant had unsuccessfully attempted to have two incriminating statements, which he had given while in police custody, suppressed. The statements were admitted into evidence and read to the jury. The appellate court, holding that the trial court did not err in admitting the statements, affirmed. (91 Ill. App. 3d 438.) We granted the defendant leave to appeal to this court under Rules 315 and 612 (73 Ill. 2d Rules 315, 612).

Pursuant to an arrest warrant issued in Ogle County, the defendant was arrested in Winnebago County shortly before midnight on Friday, September 1, 1978. Mary Smith, who was living with the defendant at the time, was also arrested. The pair was taken to the Winnebago County sheriff's office. There, at about 5:30 a.m. on September 2, they met with attorney Joseph Spiezer, who, Mary Smith testified, agreed to represent them. Later that morning they were advised by a circuit court judge in Winnebago County of the charges against them and

that in view of the murder charge bond would not be set. The defendant and Mary Smith were then transported to the Ogle County jail.

The first incriminating statement was taken in the afternoon of Sunday, September 3, during an interrogation of the defendant by an Ogle County sheriff's deputy. Police had attempted to question the defendant in the early morning hours of September 2, but he was incoherent. At the September 3 interrogation, however, he related that Mary Smith and he had driven to The Other Place Tavern in Mary Smith's automobile. Mary waited while he robbed the proprietor, Mrs. Clifty Davis. He took Mrs. Davis with him at gunpoint and drove off with her in her automobile. Mary Smith followed in her car. He said that he shot and killed the proprietor when she attempted to grab his gun. The defendant signed a transcription of the statement on Monday, September 4, while being questioned by the sheriff of Ogle County. He also made a handwritten statement, in which he told a history of heroin use and of being "high on heroin" at the time of the robbery and killing.

An information was filed on September 5. It charged the defendant and Mary Smith with murder and armed robbery.

The defendant raises several issues here, all of which were decided against him in the appellate court. First, he contends that the statements should have been suppressed as being violative of his right to counsel, on the ground that on September 2 the police had prevented his attorney and him from consulting. Too, he claims that the jury was biased in favor of the prosecution because pursuant to *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, jurors who stated that they could not impose the death penalty under any circumstances were excused for cause. He argues that his life sentence was an abuse of discretion, and he says

that the trial court violated the Constitution of Illinois by disregarding evidence of his rehabilitative potential in sentencing him. Our decision as to the statements given is dispositive of the appeal.

At the hearing on the motion to suppress, attorney Carol Ellerby testified that she was a partner of Spiezer. She said that on September 2, the day before the defendant gave the first incriminating statement, Spiezer called her from Rockford, in Winnebago County, and asked her to visit the defendant and Mary Smith. She arrived at the Ogle County jail at approximately 3 p.m. on September 2. The jailer, whom she thought was John Willard, told her that she could not see the defendant because he was going through heroin withdrawal and was "shaking so hard" that he could not stay on his bed. Ellerby then wrote upon one of her business cards that she was Spiezer's partner and that he should not make a statement without one of his lawyers being present. The jailer agreed to give the defendant the card, and allowed her to see Mary Smith. There was no evidence of any consultation by the defendant with a lawyer until after he had given the incriminating statements.

Willard testified that he was a jailer when Ellerby came to the jail on September 2, but he could not recall her asking to see the defendant. He said that he had never refused an attorney access to a prisoner, and he denied that he told her that the defendant was going through heroin withdrawal. He further testified, as did other officers, that the defendant was not going through withdrawal at the time in question. In fact, no reason was presented at the hearing that would have warranted preventing one from visiting the defendant.

The defendant testified too. He said that he did receive Ellerby's card sometime on September 2. There is no evidence in the record, though, that he was told that Ellerby had requested to see him.

The trial court, in its findings, accepted Ellerby's version of the conversation with Willard and found that at the time of her visit the defendant was represented by Spiezer's firm. Nevertheless, the court admitted the statements into evidence.

The court said that in the period from sometime in the afternoon of September 2 through September 3 and 4, the defendant was no longer represented by an attorney and found that law-enforcement personnel at the jail were aware of that fact. The findings were based upon testimony that at about 4 p.m. on September 2, Robert Thorsen, another partner of Spiezer, appearing before a different judge, told him that Spiezer had decided not to represent the defendant because he was without funds. At about 4:30 p.m., Thorsen also told Mary Smith that their firm was not going to represent the defendant. There is nothing in the record to show that the defendant was ever advised that Spiezer was not going to represent him. Spiezer did in fact enter an appearance as defendant's counsel on September 5. Spiezer represented the defendant at the hearing of the motion to suppress the confessions and at the defendant's trial.

In addition, the trial court concluded that at the time the defendant gave the statements he knowingly waived his right to have counsel present. The court found that he was given *Miranda* warnings and had freely decided to waive them. At no time, the court found, did he request counsel. Further, the court found that his decision to speak was voluntary, the court noting that the defendant was not without experience with the criminal justice system. The court found, too, that at no time immediately before or during the giving of the statements was the defendant under the influence of any drug or suffering heroin withdrawal such as to affect his free will.

The appellate court agreed with the trial court that the defendant waived his right to counsel at the interro-

gations. It did hold, though, that the defendant's sixth amendment right to counsel was violated by the jailer's refusal to allow Ellerby to visit the defendant, but the court considered that this did not taint the statements obtained on September 3 and 4 so as to require their suppression. 91 Ill. App. 3d 438, 442-47.

We consider, however, that the statements should have been suppressed. We rest that conclusion upon the defendant's right to counsel during custodial interrogation. That right stems from the fifth amendment protection against self-incrimination. We need not consider the correctness of the appellate court's analysis in terms of the general sixth amendment right to counsel, which arises upon the commencement of adversary judicial criminal proceedings. 91 Ill. App. 3d 438, 442-45.

In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court held, that prior to custodial interrogation, the subject must be informed that he has the right to remain silent and to have an attorney present. The holding was designed to protect an accused's right against compulsory self-incrimination. In effect, the court recognized a right to counsel under the fifth and fourteenth amendments as to custodial interrogation that is distinct from the right to counsel assured by the sixth amendment. See *Edwards v. Arizona* (1981), 451 U.S. 477, 480-82 n.7, 68 L. Ed. 2d 378, 383-84 n.7, 101 S. Ct. 1880, 1882-83 n.7.

The right to counsel under *Miranda's* holding can, of course, be waived, if the waiver is made knowingly and intelligently. (*Miranda v. Arizona* (1966), 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628.) But the giving of prescribed warnings and a clear waiver by the one interrogated are "prerequisites to the admissibility of any statement made by a defendant." (384 U.S. 436, 476, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629.) Such a waiver must be demonstrated by the prosecution,

though it may be inferred from the actions and words of the one interrogated. *North Carolina v. Butler* (1979), 441 U.S. 369, 373, 60 L. Ed. 2d 286, 292, 99 S. Ct. 1755, 1757.

Here, we consider that there was not a knowing and intelligent waiver of the right to counsel during the interrogation in view of the interference with Ellerby's effort to consult with the defendant. In this regard, we deem that the decision in *State v. Haynes* (1979), 288 Or. 59, 602 P.2d 272, *cert. denied* (1980), 446 U.S. 945, 64 L. Ed. 2d 802, 100 S. Ct. 2175, is persuasively relevant.

In *Haynes*, the defendant was arrested on a Saturday evening as a suspect in a murder. He was questioned that night and made some admissions. Meanwhile, his wife retained an attorney to represent him. The lawyer telephoned the police at about 8 a.m. on Sunday morning and informed them that he was coming to confer with the defendant at the jail. At 8:30 a.m., about the time the attorney arrived, the police removed the defendant to another location to question him. There, the defendant gave details of the murder. On Sunday evening he reenacted the murder on video tape. He gave another statement on the following day.

The trial court found that the police, who had taken the defendant from the jail, were aware that the attorney was coming to visit the defendant and knew that moving him would frustrate the attorney's intention to confer with the defendant. The trial court did not suppress any statements, however, because it found that the defendant was repeatedly advised of his rights and understood them. He was convicted of murder and sentenced to life imprisonment.

The Supreme Court of Oregon reversed the conviction, on the ground that the trial court should have suppressed the statements obtained after the police had interfered with the attorney's attempt to consult with the

defendant. The court acknowledged that a person in custody, after being advised of his relevant rights, could voluntarily waive consulting with a lawyer and give statements which would be admissible at trial. The court, however, held:

> "[W]hen unknown to the person in this situation an identified attorney is actually available and seeking an opportunity to consult with him, and the police do not inform him of that fact, any statement or the fruits of any statement obtained after the police themselves know of the attorney's efforts to reach the arrested person cannot be rendered admissible on the theory that the person knowingly and intelligently waived counsel." 288 Or. 59, 70, 602 P.2d 272, 277.

The court reasoned:

> "It is not disputed that an arrested person has a right to have access to counsel when taken into custody and thereafter, subject only to the practical necessities of custody that may temporarily prevent immediate communication with counsel. We know nothing in Oregon law, nor did counsel for the state when asked, that would authorize the police to prevent or delay communication between an arrested person and a lawyer who is, or who is asked to become, that person's attorney. Certainly nothing of the kind follows from the simple fact of an arrest." 288 Or. 59, 70-71, 602 P.2d 272, 277.
>
> "To pass up an abstract offer to call some unknown lawyer is very different from refusing to talk with an identified attorney actually available to provide at least initial assistance and advice, whatever might be arranged in the long run. A suspect indifferent to the first offer may well react quite differently to the second. *** We do not hold *** that this decision can be made only in the attorney's presence, although in practice this would obviate the recurring problems of proof that have been mentioned. But we agree *** that when law enforcement officers have failed to admit counsel to a person in custody or to inform the person of the attorney's efforts to reach him, they cannot thereafter rely on defendant's 'waiver' for the use of his subsequent uncounseled statements or

resulting evidence against him. We believe this rule protects the suspect's right under [the State constitution] and the federal fifth and 14th amendments not to testify against himself ***." 288 Or. 59, 72-74, 602 P.2d 272, 278-79.

There have been other holdings in which courts have suppressed statements obtained after police have foiled an attorney's efforts to consult with a client. See *State v. Matthews* (La. 1982), 408 So. 2d 1274 (because police refused to tell defendants their attorney was available and seeking to assist, subsequent interrogation was made without informed waiver of rights under State constitution incorporating the *Miranda* rules); *Commonwealth v. McKenna* (1969), 355 Mass. 313, 244 N.E.2d 560 (suspect's waiver of right to counsel at interrogation is ineffective where police have refused to admit counsel and to inform suspect of attorney's presence); see also *Commonwealth v. Hilliard* (1977), 471 Pa. 318, 370 A.2d 322 (plurality opinion) (when the attorney has been denied access to the suspect, and the suspect has not been told of the availability of the attorney, failure by the suspect to request counsel cannot support a finding of waiver of counsel); *State v. Jones* (1978), 19 Wash. App. 850, 578 P.2d 71 (when the attorney requested that interrogation not be conducted in his absence, and police do not inform the defendant of the lawyer's availability and desire to be present, there was no knowing and intelligent waiver of the right to counsel).

The Supreme Court in *Miranda* also condemned a police refusal to admit counsel. In *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, police refused a suspect's request to speak with his attorney during a preindictment interrogation. The police also failed to advise him that he had the right to remain silent. The court in *Escobedo* judged that the police conduct violated the suspect's right to the assistance of counsel under the sixth amendment. In *Miranda*, the court discussed the *Escobedo* decision. It noted that Escobedo's lawyer had vis-

ited the jail during the interrogation and asked to speak with the suspect. The *Miranda* court stated: "The police also prevented the attorney from consulting with his client. Independent of any other constitutional proscription, this action constitutes a violation of the Sixth Amendment right to the assistance of counsel and excludes any statement obtained in its wake." (*Miranda v. Arizona* (1966), 384 U.S. 436, 465-66 n.35, 16 L. Ed. 2d 694, 718-19 n.35, 86 S. Ct. 1602, 1623 n.35.) We would observe, though, that in looking back to *Escobedo* the Supreme Court has viewed it as a decision designed to protect the fifth amendment privilege against compelled self-incrimination rather than to insure the sixth amendment right to counsel. *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.

We hold that when police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a suspect access to the suspect, there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him.

Here the defendant was not informed that his attorney was available to confer with him during the weekend and that the attorney had personally requested to see him. We would note, too, that the reason given the attorney for denying access to the defendant, which Ellerby testified that she believed, was one which would indicate that no early interrogation of the defendant was to be expected.

The State points out that the defendant at some time did receive Ellerby's business card. But without his being informed that Ellerby had also requested to confer with him, the card and message were of little value. Simply receiving the card easily could have led the defendant to believe his lawyers were too busy that weekend to consult with him in person or were disinterested in his case or welfare. Receiving the card and no more would have cha-

grined and disappointed the defendant in the character of representation he was receiving from those who he believed were his attorneys. Accepting the State's argument would, as the defendant observes, permit police to isolate a suspect from his counsel and regulate or determine what information or advice a suspect is to receive.

Finally, the State argues that even if the statements should not have been admitted, admitting them was harmless error. Considering the record we cannot agree. The statements were the basis for the State's lengthy, detailed and apparently effective cross-examination of the defendant, who testified that he was nowhere near the tavern at the time of the crimes. Moreover, as the defendant points out, the only other evidence directly linking the defendant to the crimes was the testimony of Mary Smith, who pleaded guilty to armed robbery, and whose murder charges were dropped in exchange for her testimony.

For the reasons given, the judgment of the appellate court is reversed. The judgments of the circuit court convicting the defendant of armed robbery and murder are reversed and the cause is remanded to the circuit court for a new trial.

*Reversed and remanded.*