THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. AUBREY McCAULEY, Defendant-Appellee.

First District (3rd Division)   No. 1—91—0218

Opinion filed May 6, 1992.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Randall Roberts, and Brian Clauss, Assistant State's Attorneys, of counsel), for the People.

Alan D. Blumenthal, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Defendant Aubrey McCauley was indicted for first degree murder (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2)) and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). After a pretrial suppression hearing, the trial court suppressed a lineup identification and any statements defendant made to the police after his attorney was denied access to him while he was in police custody. The State has appealed. We affirm and remand.

Attorney William Walters, Chicago police sergeant Fred Bonke, and Detectives Robert Kocan and Thomas Byron testified at the suppression hearing. Their composite testimony is sufficient to establish the facts as follows. At about 5:30 p.m. on November 20, 1988, two police officers brought the defendant into the Chicago police department Area 3 station. Defendant was brought to the station in connection with a shooting death that occurred the previous day. Detectives Kocan and Byron spoke to defendant in an interview room on the third floor of the station and advised him of his *Miranda* rights. Defendant denied any involvement in the crime and gave the detectives an alibi statement which included the names of people that would corroborate his alibi.

Sergeant Bonke's office was adjacent to the office occupied by Kocan and Byron, and he was their supervisor. Between 6 p.m. and 6:30 p.m., Kocan and Byron told Bonke that they were leaving the station to check out the people that defendant gave as alibi witnesses. Kocan and Byron then left the station, but defendant remained in custody in the interview room.

At about 7 p.m., someone from the defendant's family hired Walters to represent defendant in connection with the matter for which he had been arrested. After agreeing to represent defendant, Walters telephoned a police station at 63rd and Racine Streets to determine if defendant was there. The answering police officer told Walters that defendant was not there. Walters then telephoned the Area 3 station located at 39th and California Streets and told the answering police officer that he was defendant's attorney, and that he wanted to know if the defendant was there and what was the charge against him. Although defendant was in custody at the station, the answering police officer told Walters that defendant was not at the station and that the police were looking for him.

Walters then went to the police station at 63rd and Racine Streets in an effort to find out where the police were holding defendant. At the

63rd and Racine station, Walters was told that defendant was not there but he should try the Area 3 station. Walters telephoned the Area 3 station again, and the answering police officer again told him that defendant was not there. Nevertheless, Walters went to the Area 3 station.

Walters arrived at the Area 3 station about 7:40 p.m. He identified himself as defendant's attorney and asked if he could speak to the defendant. The desk sergeant made a telephone call and then told Walters that a police officer would be down to see him. Sergeant Bonke then came down and spoke to Walters at about 7:50 p.m.

Walters showed Bonke his lawyer identification card and identified himself as defendant's attorney and asked to speak to defendant. Bonke acknowledged that the defendant was being held in custody but he refused to let Walters see or speak to defendant and refused Walters' request to let defendant know that he was there and that he wanted to speak to him. Walters told Bonke that defendant's constitutional rights were being violated but Bonke persisted in refusing to let Walters see or speak to defendant. Walters then left the station.

At about 8:15 p.m., Kocan and Byron returned to the station and told defendant that his alibi witnesses could not be found, and that he was going to be placed in a lineup. At 10 p.m., defendant was placed in a lineup where he was identified by a witness to the crime. At about 2:30 a.m. on the next day, November 21, 1988, defendant was charged with the crime.

Later, defendant filed a pretrial motion to suppress. After a hearing, the trial court suppressed the lineup identification and any statements defendant made to the police after Walters was denied access to him. The State has appealed the suppression order. See 134 Ill. 2d R. 604(a)(1).

■ The State first contends that the lineup identification should not be suppressed because defendant's sixth amendment protection for assistance of counsel was not violated. (U.S. Const., amend. VI.) The State argues that the sixth amendment protection for assistance of counsel had not yet attached because the lineup identification occurred before the defendant was formally charged. We agree that the sixth amendment protection for assistance of counsel initially attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (*Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.) We, therefore, also agree that defendant's sixth amendment protection had not yet attached at the time of

the lineup. Whether the sixth amendment is apposite, however, does not control our decision.

Our decision is controlled by deciding whether denying an attorney access to his client while he is in police custody violates the self-incrimination protection of the Illinois Constitution. (Ill. Const. 1970, art. I, §10.) On this issue, the State argues that "even if the trial court correctly determined that Walters was denied access to defendant, the trial court's ruling is still manifestly erroneous." We disagree.

■ The State relies upon *Moran v. Burbine* (1986), 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135. *Moran,* however, is distinguishable from the present case. In *Moran,* the police were holding a suspect in custody at a police station. Unknown to the suspect, while he was in custody the suspect's family hired an attorney to represent him. (*Moran,* 475 U.S. at 415, 89 L. Ed. 2d at 417, 106 S. Ct. at 1138.) The U.S. Supreme Court held that the suspect's fifth amendment rights were not violated merely because the police unintentionally or intentionally misinformed the attorney about their plans concerning the suspect (*Moran,* 475 U.S. at 421-24, 89 L. Ed. 2d at 420-22, 106 S. Ct. at 1140-42) or because they failed to inform the suspect of the attorney's efforts to reach him (*Moran,* 475 U.S. at 424-28, 89 L. Ed. 2d at 422-25, 106 S. Ct. at 1142-44). *Moran* is based upon the U.S. Supreme Court's interpretation of the protection afforded by the fifth amendment of the United States Constitution. Whatever the U.S. Supreme Court believes the law is with respect to the degree of protection afforded citizens by the Federal Constitution, in Illinois, if a suspect's family hires an attorney to represent him while he is in police custody and the police deny the attorney access to him and later obtain a lineup identification or statements from him, it violates the suspect's self-incrimination protection afforded our citizens by the constitution of Illinois. Ill. Const. 1970, art. I, §10.

Our decision is initially premised on the fact that a State constitution may be interpreted to give its citizens greater degrees of constitutional protection than the Federal Constitution. (*People v. Garcia* (1982), 109 Ill. App. 3d 142, 149, 440 N.E.2d 269, 275; see *People v. Cook* (1978), 22 Cal. 3d 67, 89, 583 P.2d 130, 142, 148 Cal. Rptr. 605, 617.) The lockstep doctrine for interpreting Illinois constitutional provisions that have parallels in the U.S. Constitution reduces the Illinois Constitution of 1970 to a supernumerary document lacking any real constitutional dimension. Moreover, if cases like *Moran* are used as a controlling comparison, it is plain that the lockstep doctrine exacts too heavy a toll on the protections embodied in the Illinois Constitution of 1970. We therefore reject the lockstep doctrine.

At the time our Illinois Constitution was adopted in convention in Springfield on September 3, 1970, and ratified by the people on December 15, 1970, the practice of *incommunicado* interrogation by the police was a *bete noire* in our society. Cases like *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, were of recent vintage. These cases and their progeny, up to 1970 at the very least, evince that *incommunicado* interrogation by the police would violate constitutional principles relating to the prohibition against self-incrimination.

It follows that when the Illinois Constitution was adopted and then ratified by the people in 1970, it was believed by all those who participated in its ratification and adoption that the prohibition against self-incrimination protection of article I, section 10, would protect citizens from *incommunicado* interrogation by the police in Illinois. Indeed, article I, section 10, is the avatar of that belief. The fact that *incommunicado* interrogation by the police is prohibited in Illinois is therefore ingrained in the fiber of our constitution. Since it is plain that the Illinois Constitution gives its citizens a greater degree of protection than the Federal Constitution as interpreted by the U.S. Supreme Court in *Moran*, the Illinois Constitution controls this case.

*Moran* is also distinguishable from the present case on a factual basis, although we do not base our decision on the factual distinction. In *Moran*, the court found it significant that the attorney telephoned and was not present at the police station when she advised the police officer that she represented the suspect who was being held in custody. In the present case, however, the attorney was actually at the police station. Thus, the present case is more similar to *People v. Smith* (1982), 93 Ill. 2d 179, 442 N.E.2d 1325, than *Moran*. In *Smith*, unlike what occurred in *Moran*, the attorney was present at the police station when he requested access to his client. In *Smith*, the court held that "when police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a suspect access to the suspect, there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him." *Smith*, 93 Ill. 2d at 189, 442 N.E.2d at 1329.

Parenthetically, we do not believe that it should be necessary to distinguish between situations (1) where the attorney is present at the police station and reasonably informs the police that he represents the suspect and (2) where the attorney reasonably informs the police tele-

phonically that he represents the suspect. The key factor should be whether the attorney has reasonably informed the police that he represents the suspect and not the methodology by which the police are informed.

The State also relies upon *People v. Holland* (1987), 121 Ill. 2d 136, 520 N.E.2d 270. The *Holland* case, however, is also distinguishable from the present case. In *Holland*, it is plain that "defendant's attorney did not in fact request access to his client." (*Holland*, 121 Ill. 2d at 164, 520 N.E.2d at 282 (Clark, C.J., specially concurring).) Here, it is plain that defendant's attorney did in fact request access to his client. Moreover, in *Holland* the supreme court declined to accept the defendant's invitation to decide the case on the basis of the Illinois Constitution rather than the Federal Constitution. We, however, are deciding the case on the basis of the Illinois Constitution.

The State also argues that Walters was hired by defendant's family to represent him and that defendant did not know that his family had hired him. In our view, the State's argument is unavailing. If there is to be any meaning whatsoever to Illinois constitutional protections for a suspect while in police custody, it must be resolved without equivocation that for a suspect's constitutional protection purposes members of a suspect's family may hire a lawyer with authority to act on the suspect's behalf while the suspect is in police custody. Once the lawyer reasonably presents to the police that he is a lawyer in good standing and that he represents the suspect in custody, the police must treat the lawyer as representing the suspect unless the suspect himself states that the lawyer does not represent him and that he does not want the lawyer to represent him. It must be made plain that there is no room within the conscience of the Illinois Constitution for approving, condoning or pretending not to see *incommunicado* police interrogation when it exists. If we approve or tolerate *incommunicado* police interrogation in any way, it makes the protection against self-incrimination in our Illinois Constitution ring hollow.

Moreover, when an attorney reasonably identifies himself and reasonably informs the police that he represents a suspect in custody, the police have no entitlement to make their own on-the-spot determination that the attorney does not lawfully represent the suspect. The purview for making that determination is plainly outside the bounds of the police. To hold otherwise would allow the police to determine the extent and existence of an attorney/client relationship. (*People v. Smith* (1991), 220 Ill. App. 3d 678, 685, 581 N.E.2d 80, 85.) In addition, it would allow the police to make the determination on an *ad hoc* basis in an atmosphere that on its face is unseemly.

Here, Walters reasonably identified himself and reasonably informed the police that he represented the defendant. Unless and until the defendant himself denied that Walters represented him and that he did not want Walters to represent him, Bonke was obligated to treat Walters as his attorney for Illinois constitutional protection purposes. Bonke was therefore bound by the Illinois Constitution to honor Walters' request to see and speak to the defendant.

It follows that the action of the police violated the defendant's self-incrimination protection of the Illinois Constitution. (Ill. Const. 1970, art. I, §10.) Accordingly, the order suppressing the lineup identification and any statements defendant made to the police after Walters was denied access to the defendant is affirmed. The case is remanded for further proceedings in the trial court.

Affirmed and remanded.

GREIMAN, P.J., and TULLY, J., concur.