THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBERT SMITH, Defendant-Appellee.

First District (3rd Division)   No. 1—88—3360

Opinion filed June 2, 1993.

Jack O'Malley, State's Attorney, of Chicago (Inge Fryklund, Theodore Burtzos, and Paul Gliatta, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

The circuit court of Cook County suppressed incriminating statements defendant Robert Smith made during a custodial interrogation by police, on grounds that they were secured by acts which violate defendant's right to counsel under the fifth amendment of the United States Constitution (U.S. Const., amend. V) and article I, section 10 of the Illinois Constitution (Ill. Const. 1970, art. I, §10). The State appealed, contending the trial court improperly granted the motion to suppress.

We affirmed the trial court's order suppressing defendant's statements (*People v. Smith* (1991), 220 Ill. App. 3d 678, 581 N.E.2d 80) (*Smith I*), and on October 30, 1991, the State filed a petition for leave to appeal with the supreme court. On November 24, 1992, the supreme court filed its opinion in *People v. Griggs* (1992), 152 Ill. 2d 1, 604 N.E.2d 257, and thereafter on February 3, 1993, by supervisory order vacated the opinion in *Smith I* and directed that we consider this matter in light of *Griggs*.

We have considered the facts and circumstances of this case in light of the supreme court's opinion in *Griggs* and we affirm the trial court.

In *Griggs* the supreme court determined that an incarcerated suspect who knows that an attorney has been retained for him, but is

not informed that the attorney is present and trying to see him, cannot make a valid waiver of his right to counsel. *Griggs*, 152 Ill. 2d at 23-30.

The *Griggs* court remanded the cause for a new hearing on defendant's motion to suppress to determine (1) whether defendant knew that an attorney was being retained for him; and (2) whether the attorney retained for defendant was present at the police station before the interrogation of defendant was completed.

> "If the circuit court determines the attorney retained for defendant was present at the police station before the interrogation of defendant was completed, the circuit court shall determine whether the attorney had requested access to his client before the interrogation of defendant was completed and whether defendant was so informed. If the circuit court finds that the defendant knew that an attorney was being retained for him, the attorney was present and had requested access to defendant before the completion of the custodial interrogation of defendant, and that police refused to so inform defendant of the immediate availability of his attorney, the circuit court shall allow defendant's motion to suppress ***." *Griggs*, 152 Ill. 2d at 29-30.

In *Griggs*, defendant telephoned his sister approximately two hours after his arrest and was advised by his sister, "[D]on't worry because first of all we'd gotten [you] a lawyer and so don't say anything to nobody." (*Griggs*, 152 Ill. 2d at 5.) The sister testified that she told the defendant the attorney's name and hired the attorney after she received defendant's call.

In the case at bar, the evidence at the suppression hearing is clearly within the *Griggs* rule and answers the questions for which *Griggs* was remanded. Smith's sister testified that early in the evening of the arrest, the defendant told her "I'm going to need a lawyer. I'm going to try and get in contact with Stamos and I want you to try and get in contact with Stamos."

The sister further testified that she, in fact, had phoned attorney James Stamos in response to her brother's request after receiving a call from defendant's girl friend that he had been arrested. Defendant's girl friend, Kelly Matthews, also testified that at the time of the arrest, defendant directed that she call defendant's sister and secure a lawyer.

The sister further testified that Matthews had called her and advised her of the arrest and that defendant said she was to contact Stamos that night.

In *Griggs*, knowledge that an attorney was retained for defendant is based upon the family's representation that they intended to secure counsel for defendant, while in the case at bar, defendant has asked that a lawyer be called and has designated the specific lawyer to be called.

Moreover, both the defendant here and the *Griggs* defendant testified that they wished to be represented by counsel. In the case at bar, the defendant continued requests to make a phone call in a further attempt to contact counsel; the detectives testified that defendant made no such request.

In *Smith I* we detailed defense counsel's agonizing attempts to contact his client. (*Smith*, 220 Ill. App. 3d at 680.) Suffice it to say that in the hours he spent in the police station, counsel made at least eight requests to see defendant and made it clear that he had been retained to represent defendant and wished to speak to the client before further interrogation was continued.

At varying times the police responded by advising counsel that the defendant was to be charged only for "traffic warrants" and another time one of the detectives repeated that no murder charges had been filed and defendant would be downstairs momentarily. At another point in time, detectives advised counsel that the detectives were conducting a lineup and defendant would be available immediately thereafter. It seems clear that this pattern of conduct was calculated to ensure that defendant did not have access to counsel during the period of interrogation.

The trial court found it more probable than not that defendant had instructed his girl friend to call his sister regarding counsel and that he had told his sister of his expectations in that regard.

We first find that defendant's confession must be suppressed since a suspect's waiver of his right to counsel is invalid if police refuse or fail to inform a suspect who knows that an attorney has been retained for him of the efforts of the attorney, present at the place of interrogation, to render assistance to the suspect prior to the termination of the interrogation. *Griggs*, 152 Ill. 2d at 29.

In *Griggs*, the court stated that when police withhold such information from the suspect, it amounts to "affirmative police interference in a communication between an attorney and a suspect [when the information withheld by the police] bears directly on the right to counsel that police are asking the suspect to waive." *Griggs*, 152 Ill. 2d at 27-28.

While the supreme court recognizes that it is not the attorney's intervention that invokes the personal right of the suspect to advice

and presence of counsel, it nonetheless finds that counsel's efforts to communicate may not be dismissed as constitutionally insignificant or irrelevant to the capacity of the suspect to make a knowing and intelligent choice whether to invoke the right to counsel. The defense attorney is not a mere supernumerary in the criminal justice system. *Griggs*, 152 Ill. 2d at 26-28.

The *Griggs* court reiterated its reasoning previously endorsed in *People v. Smith* (1982), 93 Ill. 2d 179, 186, 442 N.E.2d 1325:

> " 'To pass up an abstract offer to call some unknown lawyer is very different from refusing to talk with an identified attorney actually available to provide at least initial assistance and advice, whatever might be arranged in the long run. A suspect indifferent to the first offer may well react quite differently to the second.' " *Griggs*, 152 Ill. 2d at 26-27, quoting *State v. Haynes* (1979), 288 Or. 59, 72, 602 P.2d 272, 278, *reaffirmed in State v. Isom* (1988), 306 Or. 587, 761 P.2d 524.

██ The supreme court set out the evidence a trial court must examine when evaluating a defendant's motion to suppress: (1) did the defendant know that an attorney was being retained for him; (2) was the attorney present at the place of interrogation and requesting access to defendant before the completion of the custodial interrogation of defendant; and (3) did police refuse or fail to so inform defendant of the immediate availability of his attorney? If the answer to these questions is affirmative, then the trial court must allow defendant's motion to suppress, since under these circumstances, there could be no knowing waiver of defendant's constitutional right against self-incrimination. *Griggs*, 152 Ill. 2d at 29-30; *Smith*, 93 Ill. 2d at 189.

Other cases which have considered this issue were discussed in *Griggs*. In *Smith*, the supreme court stated:

> "[W]hen police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a suspect access to the suspect, there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him." *Smith*, 93 Ill. 2d at 189.

The defendant in *Smith* had retained an attorney who was present at the police station requesting to see his client but was denied access before defendant made his incriminating statements. *Smith*, 93 Ill. 2d at 182-83.

The supreme court distinguished *Smith* from *Moran v. Burbine* (1986), 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135, and *People v. Holland* (1987), 121 Ill. 2d 136, 520 N.E.2d 270.

In *Burbine,* the Supreme Court held that the fifth amendment did not prohibit police from refusing or failing to inform a suspect of an attorney's efforts to reach him. Unlike *Smith* and *Griggs,* the defendant in *Burbine* did not know that an attorney had been retained for him. *Griggs,* 152 Ill. 2d at 25.

The *Holland* court followed *Burbine,* finding no error in the failure by police to inform a suspect, unaware that a relative had secured counsel for him, that counsel had telephoned police regarding the suspect. *Griggs* distinguishes *Smith* from *Holland* because counsel in *Holland* never requested access to his client, so there could be no wrongful denial of attorney access. (*Griggs,* 152 Ill. 2d at 24.) Thus, *Holland* still stands to uphold an otherwise valid waiver of constitutional rights if the facts demonstrate that a suspect is unaware that an attorney has been retained for him and there is no evidence presented of a denial of attorney access. *Griggs,* 152 Ill. 2d at 24.

■■ Applying the principles enunciated in *Griggs* to the case at bar, we agree with the trial court that defendant was not able to make a knowing and voluntary waiver of his constitutional right against self-incrimination because he was denied access to his attorney.

The record establishes that: defendant was in custodial interrogation; he had asked his sister and his girl friend to attend to retaining an attorney for him; his sister did so; the attorney was present at the place of the interrogation before the completion of the interrogation and had requested access to his client approximately eight times before the completion of the interrogation; and detectives were aware that defendant's attorney was in the building continuously attempting to contact defendant but denied him access to his client prior to defendant's completion of the interrogation and his subsequent incriminating statement. This evidence demonstrates that defendant was denied his constitutional right to counsel.

In light of the supreme court's decision in *Griggs* and for all of the foregoing reasons, we affirm the trial court's determination.

Affirmed.

TULLY, P.J., and CERDA, J., concur.