No. 3-94-0033

_________________________________________________________________

                                     

                              IN THE

             APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

THE PEOPLE OF THE STATE             ) Appeal from the Circuit

OF ILLINOIS,                        ) Court of the 10th Judicial

                                    ) Circuit, Peoria County,     

     Plaintiff-Appellee,            ) Illinois

                                    )

     v.                             ) No. 93-CF-613

                                    )

ADAM J. MILESTONE                   )

                                    ) Honorable

     Defendant-Appellant.           ) Robert Manning,

                                    ) Judge, Presiding

_________________________________________________________________

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

_________________________________________________________________

     The defendant, Adam J. Milestone, was convicted, following a

jury trial, of three counts of murder in violation of section

9-1(a) of the Criminal Code of 1961 (720 ILCS 5/9-1(a) (West 1992))

and one count of robbery in violation of section 18-1 of the Code

(720 ILCS 5/18-1 (West 1992)).  He was sentenced to a term of 45

years imprisonment on one count of murder (felony murder); no

judgment was entered on the remaining counts.  We reverse and

remand for a new trial for the reasons discussed below.

     On appeal, the defendant asserts that: (1) he did not validly

waive his right to counsel because the police did not inform him

that an attorney retained for him was attempting to contact him by

telephone, and because they refused to allow the attorney to speak

to him by telephone; and (2) the trial court erred in using

modified pattern jury instructions on the charges of knowing and

intentional murder.

     Prior to trial, the defendant filed a motion to suppress a

confession he gave to the police during interrogation, which was

denied.   

     The following evidence was presented at the pretrial hearing. 

Detective Larry Hawkins of the Peoria County Sheriff's office

testified that he and Detectives Tom Yentes and Harry Sweet went to

the defendant's mother's residence at approximately 8:45 p.m. on

the evening of July 20, 1993, as part of his investigation of the

death of William Swearinger.  The defendant was not present when

the police approached his mother.  Shortly after the detectives

began to talk to her, the defendant approached the front yard. 

Hawkins identified himself and asked the defendant if he would be

willing to accompany the officers to the police station to answer

some questions concerning an investigation they were conducting. 

The defendant agreed to do so.  Yentes and Sweet took the defendant

to the station while Hawkins made a brief stop elsewhere.  

     Yentes later testified that the defendant and the two

detectives arrived at the police station at approximately 9:10 p.m. 

Yentes took the defendant to an interrogation room and began to

interrogate him regarding Swearinger's death.  

     Hawkins testified that he arrived at the station at

approximately 9:45 p.m.  At approximately 10:00 p.m., Hawkins

received a telephone call from a person who identified himself as

James Shadid.  Shadid told Hawkins that he was an attorney and then

asked if the defendant was there.  Hawkins told him that the

defendant was present at the station.  Shadid next asked Hawkins if

the defendant was being questioned, and Hawkins answered in the

affirmative.  Shadid then asked to speak to the defendant.  Hawkins

refused, saying "No, he's being interviewed right now; I'm not

going to interrupt the interview."  Shadid then asked Hawkins if

the defendant had been advised of his Miranda rights, and Hawkins

indicated that the defendant had been so advised.  Shadid then

asked if the defendant had asked to speak to an attorney, and

Hawkins said that he had not.  Hawkins testified that Shadid then

said, "I guess that's all I can do," and hung up.

     Hawkins testified that it was his opinion that Shadid was not

representing the defendant, but was merely calling to seek

information about the defendant on behalf of a friend, the

defendant's mother.  On cross-examination, however, Hawkins

admitted that the questions asked by Shadid were typical of those

asked by an attorney who is representing someone.  He further

stated that he did not inform the defendant of Shadid's call

because he did not want to "beg him to run to an attorney." 

Hawkins testified that his purpose was "to obtain a confession" and

he expected that if Shadid were allowed to talk to the defendant,

he would tell the defendant not to continue the interrogation. 

Hawkins believed that allowing Shadid access to the defendant would

defeat their purpose of obtaining a confession.

     Shadid testified that at approximately 10:30 p.m. on July 20,

1993, the defendant's mother called him at his home, told him that

the defendant had been taken in for interrogation by the police,

and retained him to represent her son.  Shadid then called the

Sheriff's department and was told that Detective Hawkins was in

charge of the case.  Shadid then called Hawkins, identified himself

to Hawkins and asked to speak to his client, Adam Milestone.  

Hawkins told Shadid that the defendant was being interviewed and

that the interview would not be interrupted.  Shadid asked if the

defendant had been given Miranda warning, and Hawkins said that he

had.  Shadid asked if the defendant had asked for an attorney and

Hawkins said that he had not.  Shadid then asked Hawkins to tell

the defendant that Shadid wished to speak to him.  Hawkins said

that he would not.  Shadid again asked to speak to the defendant,

and again was told by Hawkins that he could not speak to the

defendant.  Hawkins said that he would let the defendant speak to

Shadid only if the defendant specifically asked to speak to him. 

Shadid then terminated the conversation.  

     Shadid further testified that he considered the defendant to

be his client because the defendant's mother had asked him to

represent her son.  He often made contact with clients by calling

the station and asking to speak to them, and he could not recall

ever having been denied access to a client in this manner in the

past.  He believed that a telephone call to speak to his client was

more appropriate than travelling to the place where the defendant

was being interrogated as travelling to that location would take

over 20 minutes.     

     The defendant testified that, as he stood in front of his

mother's house before he was taken in for questioning, his mother

asked him if she wanted him to contact her attorney, Jim Shadid,

and he said yes.  He also testified that he was not informed of his

rights until after he gave a written statement, and that when

Hawkins first came into the room, he asked Hawkins if his mother

had contacted an attorney yet.  Hawkins responded that she had not. 

     The circuit court denied the motion to suppress, finding that

People v. Griggs, 152 Ill. 2d 1 (1992), was controlling.  In

reaching its decision, the circuit court made a factual

determination that the defendant did not know that an attorney had

been retained for him.  

     The issue in this matter is whether the trial court erred in

denying the defendant's pre-trial motion to suppress his confession

where the police denied an attorney, retained for the defendant

without his knowledge, access to the defendant by telephone during

the interrogation, and where the police did not inform the

defendant that the attorney was seeking to consult with him by

telephone.  

     Our supreme court, in People v, McCauley, 163 Ill. 2d 414

(1994), squarely held that a defendant's right against self-

incrimination guaranteed by article I, section 10, of the Illinois

Constitution of 1970 was violated where the police denied an

attorney, retained for the defendant without his knowledge,

physical access to the defendant during the interrogation, and

where the police did not inform the defendant that the attorney was

seeking to consult with him at the police station. 

     In the matter sub judice we are asked to determine whether the

attorney must be physically present at the police station in order

for McCauley to apply.  We hold that the physical presence of the

attorney at the police station is not required, and McCauley

applies when the attorney is attempting to contact the  defendant

by telephone, but is prevented from doing so by the actions of the

police.  

     While our supreme court in McCauley did not directly address

the question of telephonic communication by counsel, the court

nonetheless made clear that its paramount concern was that police

not actively prevent a person under interrogation from having

access to the readily available assistance of counsel.  As the

court noted:

          "The day is long past in Illinois, however,

       where attorneys must shout legal advice to their

       clients, held in custody, through the jailhouse

       door.*** Our State constitutional guarantees simply

       do not permit police to delude custodial suspects,

       exposed to interrogation, into falsely believing

       they are without immediately available legal

       counsel and to also prevent that counsel from

       accessing and assisting their clients during the

       interrogation."  McCauley, 163 Ill. 2d at 423-24. 

       

     We find persuasive the appellate court's statement in People

v. McCauley, 228 Ill. App. 3d 893 (1992):

       "[W]e do not believe that it should be necessary to

       distinguish between situations (1) where the

       attorney is present at the police station and

       reasonably informs the police that he represents

       the suspect and (2) where the attorney reasonably

       informs the police telephonically that he

       represents the suspect. The key factor should be

       whether the attorney has reasonably informed the

       police that he represents the suspect and not the

       methodology by which the police are informed."  228

       Ill. App. 3d at 897-98.

       

          We are not persuaded by the People's assertion that the police

would be unduly burdened in their work by being required to verify

that a person calling and claiming to be an attorney was, in fact,

an attorney.  Some method of verification, such as the use of an

attorney's identification number issued by the Attorney

Registration and Disciplinary Commission could be used to identify

properly licensed attorneys.  In any event, we do not see  this

minor administrative problem as a legitimate reason for denying a

right guaranteed by our constitution.  

     In short, we do not believe that whether the actions of the

police in denying a defendant access to his or her attorney violate

the Illinois constitution should turn on the attorney's method of

communication.  Police who actively prevent individuals from

exercising their constitutional rights are an anathema to our

system, and Hawkins' bold assertion that his goal was to keep

Shadid and the defendant apart so that the defendant would not seek

counsel, is a glaring example of the kind of police behavior from

which the Illinois constitution protects its citizen.       Our

supreme court, in McCauley, aptly warned us to beware of such

police practices:

       "No system worth preserving should have to fear

       that if an accused is permitted to consult with a

       lawyer, he will become aware of and exercise [his]

       rights.  (citations). *** If our system is, indeed,

       such a system, we have no reason to fear both

       lawful and protected consultation."  163 Ill. 2d 

       at 446.        

          We find that the trial court erred in not suppressing

statements made by the defendant after Shadid asked to speak with

him by telephone.  We reverse and remand on that basis.

     The defendant also maintains on appeal the court erred in

giving an improper jury instruction.  We find the defendant has

waived this issue by failing to object to the challenged

instruction and failing to offer his own instruction at trial. 

People v. Almo, 108 Ill. 2d 54 (1985).

     Finally, although the defendant did not raise on appeal the

sufficiency of the evidence to sustain a conviction, we will

consider the sufficiency of the evidence in order to protect

defendant's constitutional right against double jeopardy.  People

v. Reynolds, 257 Ill. App. 3d 792, 806 (1994).  Although we are not

making a finding as to defendant's guilt or innocence that will be

binding in a new trial, we conclude that the evidence presented at

trial, including improperly admitted evidence  was sufficient for

a jury to decide that defendant was guilty beyond a reasonable

doubt.  See, People v. Olivera, 164 Ill. 2d 382 (1995) (for

purposes of double jeopardy all evidence submitted at the original

trial may be considered when determining the sufficiency of the

evidence.)   

     Accordingly, the trial court's order denying defendant's

motion to suppress is reversed. Defendant's conviction is also

reversed and the case is remanded for a new trial and such further

proceedings as the trial court shall determine. At a new trial,

statements made to the police officers and assistant State's

Attorney before Hawkins received Shadid's telephone call at the

police station, if any, shall be admissible based upon the McCauley

decision. 

     Reversed and remanded.

     McCUSKEY and SLATER, J.J., concurred.